**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 24-_____-CIV**

**777 PARTNERS LLC** and
**SUTTONPARK CAPITAL LLC**,

       Plaintiffs,

v.

**LEADENHALL CAPITAL PARTNERS LLP,**
**LEADENHALL LIFE INSURANCE LINKED**
**INVESTMENT FUND PLC, NOAH DAVIS,**
**SAIPH CONSULTING LLC**, and
**PAUL KOSINSKI**,

       Defendants.

_____/

**<u>COMPLAINT AND JURY DEMAND</u>**

Plaintiffs 777 Partners LLC and SuttonPark Capital LLC allege against Defendants
Leadenhall Capital Partners LLP, Leadenhall Life Insurance Linked Investments Fund PLC, Noah
Davis, SAIPH Consulting LLC, and Paul Kosinski as follows.

1.      This action concerns repeated brazen and unauthorized incursions into Plaintiffs'
proprietary computer networks, in violations of the Computer Fraud and Abuse Act, 18 U.S.C.
§ 1030, as well as the related theft of computer equipment. As background context for this action,
777 Partners LLC ("777 Partners") and SuttonPark Capital LLC ("SuttonPark" and collectively
with 777 Partners, "Plaintiffs") are currently engaged in litigation initiated by Leadenhall Capital
Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (collectively
"Leadenhall") in the U.S. District Court for the Southern District of New York regarding a credit
facility that Leadenhall provided to SuttonPark and its affiliates supported by a guaranty from 777

Partners (the "Leadenhall Litigation"). In the Leadenhall Litigation, Leadenhall has made explosive claims against Plaintiffs, including for civil RICO, and which Plaintiffs are vigorously contesting, accusing Plaintiffs of engaging in fraud in connection with that credit facility. As revealed by the allegations contained herein, however, which are backed up by extensive computer forensic and other evidence, it turns out that it is Leadenhall, in conjunction with and through the actions of its agent, SAIPH Consulting ("SAIPH") and its employees, that has engaged in fraud and dishonest conduct intended to benefit Leadenhall in its SDNY litigation against Plaintiffs.

2.      Through the terms of the credit facility with SuttonPark, Leadenhall claimed to be entitled to certain limited access rights to SuttonPark's business records in order to audit collateral pledged under the credit facility. When Plaintiffs acquiesced, Leadenhall conveniently chose to hire SAIPH to perform these audits, which Leadenhall was aware was founded and is managed by SuttonPark's former senior executive, Defendant Paul Kosinski ("Kosinski"), and which just so happens to also employ 777 Partners' former head of information technology ("IT"), Defendant Noah Davis ("Davis").

3.      During the course of performing this audit work for Leadenhall, and improperly utilizing access credentials as well as extensive knowledge of Plaintiffs' computer systems, on multiple occasions Davis illegally and brazenly accessed Plaintiffs' computer networks without permission. During these incursions, Davis accessed a variety of computer databases and other repositories of information belonging to 777 Partners that he believed might prove useful to his client, Leadenhall, related to the audit work and the Leadenhall Litigation. Davis further attempted to copy information contained on those systems, including information potentially useful in the Leadenhall Litigation, as well as secretly granted himself administrator level access to a number of them. Evidencing SAIPH's intent to aid its client, Leadenhall, Davis specifically targeted the

email files of Steven W. Pasko—a co-founder and former managing partner of 777 Partners and one of the individual defendants in the Leadenhall Litigation.

4.     Because of Davis's knowledge of Plaintiffs' computer systems and his unauthorized grant to himself of administrator level access, the full extent of his activities within 777 Partners' systems, including the actual number of illegal incursions, what information he may have reviewed, copied, altered, or otherwise interfered with, and for what purposes, is not, and may never be, fully known.

5.     Additionally, not satisfied with merely making virtual incursions onto Plaintiffs' property, Davis was later captured on video surveillance cameras breaking into SuttonPark's offices, without permission, and stealing several laptop computers belonging to 777 Partners, likely to further access whatever confidential and propriety information belonging to 777 Partners he might find therein. SAIPH subsequently confirmed in writing that Davis had engaged in this improper physical access. Moreover, in doing so, SAIPH intriguingly let slip the involvement of Leadenhall by referencing it by name in the first version of this correspondence sent to 777 Partners' counsel, before quickly sending a second version that was otherwise substantively identical but for removal of the reference to Leadenhall.

6.     On information and belief and based on: (i) Leadenhall's aggressive actions and litigation tactics against 777 Partners; (ii) the targeted access to and attempt to transfer Mr. Pasko's email files; (iii) the timing of at least one incursion in occurring just prior to an important hearing in the Leadenhall Litigation; (iv) Leadenhall's insistence on retaining SAIPH specifically, which possessed significant proprietary knowledge about 777 Partners' operations and computer systems, through its founder, Kosinski, and employee, in spite of Plaintiffs' vigorous objections; (v) the agency relationship between Leadenhall and SAIPH, Kosinski, and Davis; and

SGR/71580246.5

(vi) SAIPH's inadvertent acknowledgment of Leadenhall's relationship to these incursions, the foregoing acts were performed at Leadenhall's behest, for Leadenhall's benefit, and with Leadenhall's full knowledge and encouragement.

**PARTIES**

**Plaintiffs**

7.      Plaintiff 777 Partners is a Miami-based private investment firm organized as a limited liability company under the laws of Delaware, which has its principal place of business at 100 SE 2nd Street, Suite 2000, Miami, Florida 33131. The company is focused on a range of investments in the insurance, aviation, sports, and media sectors.

8.      Plaintiff SuttonPark is a corporate affiliate of 777 Partners, organized as a limited liability company under the laws of Delaware, which has its principal place of business at 2255 Glades Road, Suite 100E, Boca Raton, Florida 33431.

**Defendants**

9.      Defendant Leadenhall Capital is a London-based asset management company which focuses on granting institutional investors access to insurance-related risks. Leadenhall Capital is organized as a limited liability partnership under the laws of England and maintains its principal place of business in London, England at Level 15, 70 Mark Lane, London EC3R 7NQ.

10.      Defendant Leadenhall Life Insurance Linked Investment Fund PLC is an investment company organized as a public limited company under the laws of Ireland and maintains its principal place of business in Dublin, Ireland.

11.      Defendant SAIPH is a consulting firm organized as a limited liability company under the laws of Delaware, which has its principal place of business at 1615 S. Congress Avenue, Suite 103, Delray Beach, Florida 33445. SAIPH was formed and is managed by former SuttonPark

senior executive Kosinski. According to its website, SAIPH offers "bespoke financial, operational and advisory solutions," including "Audit Guidance."

12.     Defendant Kosinski, was formerly a senior executive at SuttonPark, and is the founder and managing member of SAIPH, and his known address is 17029 Newport Club Drive, Boca Raton, Florida 33496.

13.     Defendant Davis resides in Boca Raton, Florida and was formerly the head of IT for 777 Partners, until April 2024. Davis was subsequently hired by SAIPH and was employed there at all relevant times.

## JURISDICTION AND VENUE

14.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court also has supplemental jurisdiction over Plaintiffs' related state-law claims under 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendants SAIPH, Kosinski, and Davis because they are domiciled in Florida.

16.     This Court has personal jurisdiction over Leadenhall because Leadenhall engaged the services of SAIPH, whose principal place of business is in Florida, and those services were to be rendered within the state of Florida. Further, this Court has personal jurisdiction over Leadenhall under Florida's long-arm statute, because Leadenhall, as alleged herein, in its own right and through its agents SAIPH, Kosinski, and Davis, committed tortious acts within the state.

17.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the substantial part of the events giving rise to the claims occurred and a substantial part of the property that is the subject of this action are situated in the district.

SGR/71580246.5

## FACTUAL BACKGROUND

18.     On May 3, 2024, Leadenhall filed the Leadenhall Litigation in the U.S. District Court for the Southern District of New York, accusing 777 Partners, its former principals, and others of breach of contract and fraud in connection with a secured credit facility provided by Leadenhall to 777 Partners. *See Leadenhall Capital Partners LLP, et ano. v. Wander, et al.*, 24 Civ. 3453 (JGK) (S.D.N.Y.). Pursuant to Leadenhall's contractual rights under the credit facility, Leadenhall claims it is entitled to certain access to SuttonPark's systems to review and audit the collateral pledged by SuttonPark and its affiliates to secure the credit facility.

19.     In connection with these asserted contractual rights, Leadenhall proposed to engage SAIPH and its founder, Kosinski, as its agents to perform these audits. Concerned that Kosinski was a former senior executive of SuttonPark who had solicited SuttonPark's employees to join a competitor, Plaintiffs initially forcefully objected to this proposed engagement. Nevertheless, due to the insistence of Leadenhall, and based on Leadenhall's and SAIPH's repeated assurances that their review of documents would be strictly limited to those directly pertaining to Leadenhall's collateral, Plaintiffs eventually relented. In its complaint in the Leadenhall Litigation, Leadenhall asserted that these objections by Plaintiffs were baseless and intended to prevent the uncovering of the fraud Leadenhall had alleged. However, subsequent events would later demonstrate that Plaintiffs' initial impression was the right one, and their concerns justified.

20.     In approximately early May 2024, Plaintiffs provided SAIPH, as Leadenhall's agent, with network credentials allowing it limited access to SuttonPark's systems for the limited purpose of a collateral audit. Importantly, such credentials were only provided to, and for the use of, two SAIPH employees—Kosinski and Lauren Boersig, not Davis—and authorized access was limited to the particular database detailing Leadenhall's collateral within MP Fin. MP Fin is the

SGR/71580246.5

proprietary application used by SuttonPark to manage receivables and other assets securing loans from various lenders as well as receivables owned by third party clients and serviced by SuttonPark on a fee basis but unrelated to Plaintiffs or any of its lenders. Critically, the MP Fin files contain Personal Identifiable Information ("PII") data belonging to various customers and clients of Plaintiffs.

21.     Nevertheless, Davis, upon information and belief at the behest of his employer's client, Leadenhall, used his extensive knowledge of Plaintiffs' systems, gained during his time as head of IT for 777 Partners, as well as his prior 777 Partners' access credentials (which he was no longer entitled to use following his separation from 777 Partners), to gain extensive and unauthorized access into 777 Partners' systems on multiple occasions. However, because of this knowledge, and because of the system authority Davis was able to access and grant himself during these illegal incursions, it is likely that these are not the only instances in which Davis improperly accessed Plaintiffs' systems. Similarly, Plaintiffs are as yet unsure of the full extent of Davis's activities during any such incursions, including potentially copying and/or altering important commercial data.

22.     Moreover, all of the systems and information of Plaintiffs' that Davis accessed (some of which was likely altered) would clearly be considered by Leadenhall as useful in prosecuting the Leadenhall Litigation against Plaintiffs.

23.     First, on June 28, 2024, Davis utilized his former 777 Partners' email address and credentials to improperly access the web server that runs the front end of SuttonPark's MP Fin system.

24.     Next, on July 7, 2024, Davis again utilized these credentials to remotely access the laptops assigned to two individuals without permission or authorization. Davis first accessed the

laptop of Mr. Pasko. During this incursion, Davis attempted to transfer data from Mr. Pasko's Microsoft Outlook OST file. An OST file, which stands for "offline storage table," is a synchronized copy of an Outlook users' entire mailbox, including all sent items, drafts, calendars, and folders containing emails. There is no apparent reason for Davis to have accessed and attempted to transfer data from Mr. Pasko's Outlook account other than to gather information that would be useful to Leadenhall in the Leadenhall Litigation.

25.     Davis then also accessed the laptop of Jen Logee, the chief compliance officer of a 777 Partners affiliate wholly unrelated to SuttonPark's business, who handles contract compliance with respect to asset purchases and dispositions. Ms. Logee has also performed work related to the allegations in the Leadenhall Litigation. During this incursion, Davis accessed the directory of files contained on Ms. Logee's laptop, as well as certain specific file folders on the laptop. Davis also accessed the One Drive-based storage account assigned to Ms. Logee. Notably, through this access to Ms. Logee's individual laptop, Davis exploited his knowledge of Plaintiffs' computer systems and their vulnerabilities to gain access to 777 Partners' entire network environment. Further, these incursions occurred *only one day before an important hearing was held in the Leadenhall Litigation*.

26.     On August 9, 2024, Davis again improperly accessed a variety of Plaintiffs' systems, wrongfully using his former 777 Partners' credentials. First, Davis once more accessed the frontend of the MP Fin system, viewing and seemingly editing data residing in the system. Second, Davis accessed the web server that runs the back end database of the MP Fin System. Third, Davis twice accessed the virtual network of a 777 Partners subsidiary. Fourth, Davis accessed a file server containing accounting and executive data belonging to 777 Partners and several of its affiliated companies. Fifth, Davis accessed the computer records of a former 777

SGR/71580246.5

Partners' affiliate to access an SAP database that contained financial data unrelated to Leadenhall's collateral audit. During each of these incursions, Davis further set up local administrator accounts in each of these systems, giving him administrator level control over the systems. Lastly, Davis again accessed the MP Fin system, this time using the credentials that had been provided to SAIPH for Ms. Boersig's use in accessing SuttonPark's systems.

27.     On this same date, August 9, 2024, 777 Partners' current head of IT first received system alerts notifying him of suspicious activity and access into the network and immediately confronted Davis, who falsely denied his involvement. Accordingly, Plaintiffs engaged a forensic cyber investigator, and began an investigation into this suspicious activity. That investigation then uncovered the unauthorized and improper incursions previously alleged, as well as digital forensic evidence firmly supporting the conclusion that these incursions were all attributable to Davis, including the August 9, 2024 use of Ms. Boersig's credentials:

- For all but the incursion involving Ms. Boersig's credentials, access credentials issued to Davis during his employment with 777 Partners were utilized.

- After logging in with these credentials, two-factor authentication was necessary in order to access the systems, which in each case involved a text message being sent to a cellular telephone registered to Davis.

- Utilization of the remote access application to perpetuate these incursions required specific and detailed knowledge of the Plaintiffs' systems and related software, such as that possessed by Davis.

- The first incursion on June 28 came from the same IP address and IP address location used by Davis to log in when working from home while an employee of 777 Partners, and each subsequent incursion was made from that same IP address or other IP addresses located where Davis is known to reside and work.

- The incursion utilizing Ms. Boersig's credentials is attributable to Davis because it came from the same IP address and location used in connection with several of the prior incursions that utilized Davis's credentials and cellular telephone for two-factor authentication, whereas Ms. Boersig is known to reside and work in a different region of the country.

28.     By letters dated August 20, 2024 and August 30, 2024, Plaintiffs' counsel notified Leadenhall and SAIPH respectively about the illegal incursion by a SAIPH employees into Plaintiffs' networks.

29.     Not content with merely virtually breaking into Plaintiffs' computer systems, on September 5, 2024, Davis illegally entered SuttonPark's offices to engage in further criminal misconduct. Surveillance footage from that night shows that after entering the offices Davis entered the server room and removed equipment.  Davis also went to the office of a former executive whom he knew possessed physical keys for various locks throughout SuttonPark's offices where he retrieved keys including the key to the desk of Plaintiffs' current head of IT. On other footage he can be seen filling two large bags with what is now known to be laptops belonging to SuttonPark that had been locked inside the desk of Plaintiffs' current head of IT, before departing with the stolen laptops and other equipment. Certain screenshots from this footage showing Davis in SuttonPark's offices, using a key to enter the server room and leaving that room with computer equipment are reproduced below:

SGR/71580246.5





SGR/71580246.5

 

30.     Moreover, on September 11, 2024, SAIPH sent correspondence to counsel for Plaintiffs, acknowledging in writing that Davis had entered SutonPark's offices and had taken computer equipment from the premises. Intriguingly, and perhaps in an effort to obscure the involvement of Leadenhall in the alleged misconduct it had inadvertently revealed, SAIPH's initial letter to this effect referenced Leadenhall in the subject line, before being substituted by a second such letter that was identical to first, but for the removal of the reference to Leadenhall.

31.     Based on: (i) Leadenhall's aggressive actions and litigation tactics against Plaintiffs; (ii) the targeted access to and attempt to transfer Mr. Pasko's email files; (iii) the timing of at least one incursion in occurring just prior to an important hearing in the Leadenhall Litigation; (iv) Leadenhall's insistence on retaining SAIPH specifically, which possessed significant

proprietary knowledge about Plaintiffs' operations and computer systems, through its founder, Kosinski, and employee, in spite of Plaintiffs' vigorous objections; (v) the agency relationship between Leadenhall and SAIPH, Kosinski, and Davis; and (vi) SAIPH's inadvertent acknowledgment of Leadenhall's relationship to these incursions, it is clear that the actions of Davis were known to and directed by Leadenhall for its benefit in the Leadenhall Litigation.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(Computer Fraud and Abuse Act, 18 U.S.C. § 1030, Against All Defendants)**

32.     Plaintiffs repeat and reallege the allegations contained in the paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

33.     On repeated occasions, Davis intentionally accessed Plaintiffs' computer systems, which are used in interstate commerce, without permission or authority to do so.

34.     In the course of this access, Davis obtained extensive confidential and proprietary data that is contained in these computer systems.

35.     As a result of this unauthorized access, Plaintiffs have or will have to expend thousands of dollars in investigating and remediating the consequences of these incursions.

36.     SAIPH and Kosinski are liable on this claim because they directed, encouraged and/or induced Davis and, alternatively, are liable for the actions of their employee Davis, pursuant to the doctrine of respondeat superior.

37.     Leadenhall is liable on this claim because it directed, encouraged and/or induced SAIPH, Kosinski, and/ or Davis and, alternatively, is liable for the actions of its agents, SAIPH, Kosinski, and Davis, because accessing and reviewing Plaintiffs' computer systems is within the scope of SAIPH's responsibilities and authority from Leadenhall, and (upon information and belief) because these incursions were made with the knowledge of and at the behest of Leadenhall.

Indeed, the facts and surrounding circumstances strongly suggest that the misconduct was done at Leadenhall's direction.

38.     By reason of the foregoing, Plaintiffs have suffered damages for which all Defendants are liable, in an amount to be proven at trial (but in no event less than $5,000), plus interest, attorneys' fees, and costs as appropriate.

## SECOND CLAIM FOR RELIEF
### (Conversion Against All Defendants)

39.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

40.     Davis interfered with Plaintiffs' possession and dominion over their property by: (i) intentionally and without permission accessing Plaintiffs' computer systems to obtain Plaintiffs' confidential and proprietary business records and other information; and (ii) intentionally taking certain laptops containing confidential and proprietary information owned by Plaintiffs without their permission.

41.     By reason of the foregoing, Davis, intentionally and without authority, assumed or exercised control over Plaintiffs' property, in derogation of Plaintiffs' possessory rights or interest in their property.

42.     SAIPH and Kosinski are liable on this claim for the actions of their employee Davis, pursuant to the doctrine of respondeat superior.

43.     Leadenhall is liable on this claim for the actions of its agents, SAIPH, Kosinski, and Davis, because the misconduct was committed with the knowledge of and at the behest of Leadenhall.

44.     By reason of the foregoing, Plaintiffs have suffered damages for which all defendants are liable, in an amount to be proven at trial.

SGR/71580246.5

### THIRD CLAIM FOR RELIEF
### (Replevin Against All Defendants)

45.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

46.     Davis has wrongfully detained Plaintiffs' property by intentionally taking certain laptops and data owned by Plaintiffs without their permission.

47.     The value of the wrongfully detained computer equipment is at least $5,600 and is likely being held by Davis at his residence or at SAIPH's offices.

48.     Plaintiffs are the proper owners of the property. The property has not been taken for any tax, assessment, or fine pursuant to law. Nor has the property been taken under an execution or attachment against Plaintiffs' property.

49.     SAIPH and Kosinski are liable on this claim for the actions of their employee Davis, pursuant to the doctrine of respondeat superior.

50.     Leadenhall is liable on this claim for the actions of its agents, SAIPH, Kosinski, and Davis, because the misconduct was committed with the knowledge of and at the behest of Leadenhall.

### FOURTH CLAIM FOR RELIEF
### (Trespass to Chattels Against All Defendants)

51.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

52.     Davis interfered with Plaintiffs' use and enjoyment of their property by intentionally taking certain laptops owned by Plaintiffs without their permission.

53.     By reason of the foregoing, Davis, intentionally and without justification or consent, physically interfered with Plaintiffs' use of their property, caused harm to the physical

-15-

condition, quality, or value of the property, and deprived Plaintiffs of the use of their property for a substantial time.

54.     SAIPH and Kosinski are liable on this claim for the actions of their employee Davis, pursuant to the doctrine of respondeat superior.

55.     Leadenhall is liable on this claim for the actions of its agents, SAIPH, Kosinski, and Davis, because the misconduct was committed with the knowledge of and at the behest of Leadenhall.

56.     By reason of the foregoing, Plaintiffs have suffered damages for which all Defendants are liable, in an amount to be proven at trial, plus interest and costs as appropriate, as well as additional equitable and injunctive relief as set forth below.

**FIFTH CLAIM FOR RELIEF**
**(Civil Conspiracy Against All Defendants)**

57.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

58.     SAIPH, Kosinski, and their employee, Davis, are the agents of Leadenhall, and as such are directed by, and act with the knowledge of its principal in connection with its consulting services related to Plaintiffs.

59.     Accordingly, Defendants willfully, intentionally, and knowingly agreed to further a shared plan, which included gaining unauthorized access to Plaintiffs' computer systems.

60.     Each of the Defendants actively participated in the shared civil conspiracy as described above, and therefore each Defendant is responsible for each tortious and otherwise unlawful action of any co-conspirator – in particular, the actions of Davis in unlawfully accessing Plaintiffs' computer systems without authority or permission, and in stealing laptop computers from SuttonPark's offices.

-16-

61.    By reason of the foregoing, Plaintiffs have suffered damages for which all Defendants are liable, in an amount to be proven at trial, plus interest and costs as appropriate, as well as additional equitable and injunctive relief as set forth below.

**SIXTH CLAIM FOR RELIEF**
**(Aiding and Abetting Against Defendants Leadenhall, SAIPH, and Kosinski)**

62.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

63.    As previously alleged, Davis perpetrated a variety of torts against Plaintiffs.

64.    Leadenhall substantially assisted Davis's tortious conduct by engaging him and his employer, SAIPH, to perform the collateral audit, without which SAIPH, and by extension Davis, would not have had access to the log in credentials for SuttonPark's systems, which were provided to Leadenhall pursuant to its purported audit rights. Moreover, the facts and circumstances strongly indicate that Leadenhall directed the actions of Davis.

65.    SAIPH and Kosinski substantially assisted Davis' tortious conduct by providing him with the log in credentials they had received from SuttonPark, allowing him to access SuttonPark's systems.

66.    At all relevant times, Leadenhall and SAIPH were aware of their roles in enabling Davis's tortious conduct.

67.    By reason of the foregoing, Plaintiffs have suffered damages for which Leadenhall, SAIPH, and Kosinski are liable, in an amount to be proven at trial, plus interest and costs as appropriate, as well as additional equitable and injunctive relief as set forth below.

SGR/71580246.5

## SEVENTH CLAIM FOR RELIEF
### (Fraud Against Defendants Leadenhall, SAIPH, and Kosinski)

68.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

69.     In connection with receiving log in credentials to SuttonPark's systems, SAIPH and Kosinski, as well as Leadenhall, in its own capacity or through its agents SAIPH and Kosinski, represented to Plaintiffs that these credentials would be used only by the permitted individuals, Kosinski and Boersig, and only to review the permitted information.

70.     At the time SAIPH, Kosinski, and Leadenhall made these representations, these Defendants knew of or were reckless with respect to the falsity of these representations, in that these Defendants were not intending to keep the use of such credentials limited to only the two authorized individuals, but instead would make them available to other members of SAIPH's audit team, including Davis.

71.     Leadenhall, SAIPH, and Kosinski, in making these representations to Plaintiffs intended that these representations would cause Plaintiffs to provide the requested credentials and system access.

72.     Plaintiffs relied on these representations in deciding to permit access and provide the requested credentials for SuttonPark's systems.

73.     Leadenhall's agent, and SAIPH and Kosinski's employee, Davis, then utilized these credentials to make unauthorized access into Plaintiffs' computer systems, and to obtain confidential and proprietary data beyond the scope of what was permitted or expected by Plaintiffs.

74.     By reason of the foregoing, Plaintiffs have suffered damages for which Leadenhall, SAIPH, and Kosinski are liable, in an amount to be proven at trial, plus interest and costs as appropriate, as well as additional equitable and injunctive relief as set forth below.

SGR/71580246.5

**EIGHTH CLAIM FOR RELIEF**
**(Florida Computer Abuse and Data Recovery Act, §668.801, et seq., Fla. Stat. (2024),**
**Against All Defendants)**

75.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

76.     On repeated occasions, Davis intentionally accessed Plaintiffs' computer systems, which are protected by passwords and other security measures intended to restrict access, without the authority to do so.

77.     Upon information and belief, in the course of this access, Davis obtained extensive confidential and proprietary data belonging to Plaintiffs that is contained in these computer systems.

78.     As a result of this unauthorized access, Plaintiffs have or will have to expend thousands of dollars in investigating and remediating the consequences of these incursions.

79.     SAIPH and Kosinski are liable on this claim because they directed, encouraged and/or induced Davis and, alternatively, are liable for the actions of their employee Davis, pursuant to the doctrine of respondeat superior.

80.     Leadenhall is liable on this claim because it directed, encouraged and/or induced SAIPH, Kosinski, and/ or Davis and, alternatively, is liable for the actions of its agents, SAIPH, Kosinski, and Davis, because accessing and reviewing Plaintiffs' computer systems is within the scope of SAIPH's responsibilities and authority from Leadenhall, and because these incursions were made with the knowledge of and at the behest of Leadenhall. Indeed, the facts and surrounding circumstances strongly suggest that the misconduct was done at Leadenhall's direction.

SGR/71580246.5

81.     By reason of the foregoing, Plaintiffs have suffered damages for which all Defendants are liable, in an amount to be proven at trial, plus interest, attorneys' fees, and costs as appropriate, as well as additional equitable and injunctive relief as set forth below.

<u>NINTH CLAIM FOR RELIEF</u>
<u>(Stored Communications Act, 18 U.S.C. § 2701, et seq., Against All Defendants)</u>

82.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 31 with the same force and effect as if fully set forth herein.

83.     On July 7, 2024, Davis intentionally accessed and attempted to copy and/or transfer information contained in Mr. Pasko's Outlook mailbox, a facility through which an electronic communication service is provided, without authorization to do so.

84.     Upon information and belief, in the course of this access, Davis obtained the electronic communications of Mr. Pasko while in electronic storage in his Outlook mailbox.

85.     As a result of this unauthorized access, Plaintiffs have or will have to expend thousands of dollars in investigating and remediating the consequences of this incursion.

86.     SAIPH and Kosinski are liable on this claim because they directed, encouraged and/or induced Davis and, alternatively, are liable for the actions of their employee Davis, pursuant to the doctrine of respondeat superior.

87.     Leadenhall is liable on this claim because it directed, encouraged and/or induced SAIPH, Kosinski, and/ or Davis and, alternatively, is liable for the actions of its agents, SAIPH, Kosinski, and Davis, because accessing and reviewing Plaintiffs' computer systems is within the scope of SAIPH's responsibilities and authority from Leadenhall, and because these incursions were made with the knowledge of and at the behest of Leadenhall. Indeed, the facts and surrounding circumstances strongly suggest that the misconduct was done at Leadenhall's direction.

-20-

88.     By reason of the foregoing, Plaintiffs have suffered damages for which all Defendants are liable, in an amount to be proven at trial, plus interest, attorneys' fees, and costs as appropriate, as well as additional equitable and injunctive relief as set forth below.

**PRAYER FOR RELIEF**

Plaintiffs pray for the following relief:

a)     An award of compensatory damages in an amount to be determined;

b)     An order mandating that Defendants return the stolen laptops, data and information taken from Plaintiffs;

c)     A writ of replevin to recover the stolen laptops, data and information;

d)     An award of pre-judgment and post-judgment interest;

e)     An award of all reasonable fees, costs, and expenses, including attorneys' fees;

f)     Punitive damages in an amount to be determined at trial;

g)     Preliminary and permanent injunctive relief to prevent Defendants from continuing to possess, access, use or disseminate data and information misappropriated from Plaintiffs; and

h)     An award of such other and further relief as the Court deems just and proper.

SGR/71580246.5

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury of all claims so triable.

Dated: September 17, 2024

Respectfully submitted,

GUNSTER YOAKLEY & STEWART P.A.

<u>/s/ Brian M. McPherson</u>
GEORGE LEMIEUX
FLORIDA BAR NO. 16403
BRIAN M. MCPHERSON
FLORIDA BAR NO. 735541
777 S. FLAGLER DR.
EAST TOWER, SUITE 500
WEST PALM BEACH, FL33401
Telephone:  (561) 655-1980
Facsimile:  (561) 655-5677
Primary Email:  Glemieux@gunster.com
Primary Email:  Bmcpherson@gunster.com

- and -

SMITH GAMBRELL & RUSSELL LLP

John G. McCarthy (not admitted in Florida)
David A. Pellegrino (not admitted in Florida)
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Telephone:  (212) 907-9700
Facsimile:  (212) 907-9800
Primary Email:  Jmccarthy@sgrlaw.com
Primary Email:  Dpellegrino@sgrlaw.com

*Attorneys for Plaintiff 777 Partners LLC and*
*SuttonPark Capital LLC*

SGR/71580246.5