# EXHIBIT 2

# Declaration of Ian Ratner in Support of Plaintiffs' Motion For a Preliminary Injunction dated September 27, 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-81143-CIV-DMM

**777 PARTNERS LLC** and
**SUTTONPARK CAPITAL LLC**,

       Plaintiffs,

v.

**LEADENHALL CAPITAL PARTNERS LLP,
LEADENHALL LIFE INSURANCE LINKED
INVESTMENT FUND PLC, NOAH DAVIS,
SAIPH CONSULTING LLC**, and
**PAUL KOSINSKI**,

       Defendants.

_____/

**DECLARATION OF IAN RATNER IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

IAN RATNER, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a Co-Chief Executive Officer at GlassRatner Advisory & Capital Group LLC which does business as B. Riley Advisory Services ("B. Riley"). I also currently serve as a manager of Plaintiff 777 Partners LLC ("777 Partners") in the instant action. B. Riley's parent company, B. Riley Financial, Inc., is listed on the NASDAQ stock exchange under the ticker RILY. Plaintiff SuttonPark Capital LLC ("SuttonPark") is an affiliate of 777 Partners.

2.      I have personal knowledge of the matters described in this declaration, and if called as a witness, I could and would testify competently to the matters discussed in this declaration.

3.      I am a CPA with approximately 35 years of experience in Public Accounting, Forensic Accounting and Litigation Support, Business Valuations, Due Diligence Services,

Docusign Envelope ID: 0E5388D2-4649-4514-AB29-2A8B776D4A32

Corporate Finance and Bankruptcy Consulting. I am a Certified Public Accountant ("CPA") licensed in Georgia and hold the specialty designation Accredited in Business Valuations ("ABV") from the American Institute of Certified Public Accountants ("AICPA"). In addition to the above, I am an Accredited Senior Appraiser ("ASA") and hold the designation Certified Fraud Examiner ("CFE") granted by the Association of Certified Fraud Examiners. I hold graduate and undergraduate business degrees from McGill University in Montreal, Canada. I co-authored a Wiley text titled "Business Valuation and Bankruptcy" and was inducted as a Fellow by the American Bankruptcy College in 2010. In 2017 and 2018, I was named as one of the Top 100 Restructuring & Turnaround Professionals by the Global M&A Network.

4.     My restructuring practice is diverse and includes assignments such as Special Master, Receiver, Chief Restructuring Officer, Liquidating Agent and other fiduciary roles, creditor committee representations, due diligence engagements, monitoring borrowers on behalf of lenders, and leading difficult multi-bank restructuring assignments on behalf of borrowers and lenders. I have been a damages expert in complex commercial litigation cases, testified at trial, arbitration, and deposition on more than 275 occasions. I have worked on matters throughout the United States and the Caribbean on behalf of both law firms, government agencies, such as the Department of Justice, and Fortune 500 companies.

5.     In early May 2024, 777 Partners retained professionals from B. Riley, including me, to serve as independent fiduciaries to oversee operations, evaluate financial performance, and to resolve outstanding disputes involving the 777 Partners and its affiliates worldwide, including the dispute with Defendants Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (collectively, "Leadenhall").

SGR/71614334.1

Docusign Envelope ID: 0E5388D2-4649-4514-AB29-2A8B776D4A32

6.      777 Partners is an investment firm that conducts business nationwide as well as internationally, across a variety of industries including the insurance, aviation, sports, and media sectors.  The subsidiaries and affiliates of 777 Partners and SuttonPark include dozens of operating companies, employing thousands of people on at least four continents.  The organizational chart for the 777 affiliated entities contains almost 60 pages of flow charts.  The business lines are diverse including discount airlines, movie companies, insurance and reinsurance companies and several soccer clubs in Europe and South America.  SuttonPark and its direct affiliates are in the business of sourcing, underwriting, structuring, and servicing of structured settlements, annuities and lottery winnings.

7.      On May 3, 2024, Leadenhall filed an action in the United States District Court for the Southern District of New York entitled *Leadenhall Capital Partners LLP, et ano. v. Wander, et al.*, 24 Civ. 3453 (JGK) (the "Leadenhall Litigation").

8.      The two principals of 777 Partners, Steven W. Pasko and Josh Wander, resigned as managers of 777 Partners and ceded authority to my colleagues and I to have independent control of 777 Partners and its affiliates.  Pasko and Wander have, however, remained engaged by 777 Partners to share with us the enormous amount of institutional knowledge about the operations of the various lines of business.

9.      In the Leadenhall Litigation against 777 Partners, SuttonPark, Pasko and Wander, other affiliated entities, and other defendants, Leadenhall asserted explosive claims against Plaintiffs—which Plaintiffs dispute—including for civil RICO and fraud in connection with a secured credit facility provided by Leadenhall to subsidiaries of 777 Partners and guaranteed by 777 Partners.

SGR/71614334.1

Docusign Envelope ID: 0E5388D2-4649-4514-AB29-2A8B776D4A32

10.     Under the terms of the secured lending facility, certain affiliates of 777 Partners were required to provide collateral to secure the debt to Leadenhall.  The amount of collateral then determined how much money 777 Partners' affiliates were able to borrow.  777 Partners provided an unsecured guaranty of the lending facility.

11.     In the Leadenhall Litigation, Leadenhall asserts that 777 Partners and its subsidiaries fraudulently inflated the value of the collateral by pledging certain assets that it either did not own, or that had already been pledged to other lenders under different loan agreements.

12.     Pursuant to Leadenhall's asserted contractual rights under the credit facility, Leadenhall claims that it is entitled to certain access to SuttonPark's systems to review and audit the collateral securing the credit facility, *i.e.*, revenue from structured settlements, annuities and lottery winnings.  To that end, Leadenhall had engaged Saiph and its founder, Defendant Paul Kosinski, as its agents to perform an audit of SuttonPark with respect to the collateral.

13.     I learned that the management of SuttonPark initially objected to this proposed engagement because they were concerned about having Kosinski (a former senior executive of SuttonPark who had allegedly solicited SuttonPark's employees to join a competitor) perform the audit.

14.     Nevertheless, due to the insistence of Leadenhall and our desire to collaborate with Leadenhall, and based on Leadenhall's and Saiph's repeated assurances that their review of documents would be strictly limited to those directly pertaining to Leadenhall's collateral, eventually I caused Plaintiffs to relent and allow Saiph access to SuttonPark's MP Fin System to conduct a collateral audit only.

4

Docusign Envelope ID: 0E5388D2-4649-4514-AB29-2A8B776D4A32

15. On June 7, 2024, Leadenhall obtained a temporary restraining order (the "TRO") in the Leadenhall Litigation. I submitted a declaration in opposition to the application for a TRO and preliminary injunction where I explained, *inter alia*, Pasko's continued assistance to 777 Partners and its affiliates.

16. Pursuant to the applicable rules, the TRO was to expire on Monday, July 8, 2024. The SDNY Court scheduled (and conducted) a hearing for 4:30 p.m. on July 8 to decide whether to convert the TRO into a preliminary injunction.

17. On August 9, 2024, or shortly thereafter I learned from my team at SuttonPark that they had reason to believe that someone working for Saiph had made numerous unauthorized intrusions into computer systems belonging to 777 Partners and SuttonPark. I now understand that one of those alleged intrusions was the day before the July 8 hearing in the Leadenhall Litigation.

18. On or about August 13, 2024, I asked Eric V. Mazur of B. Riley who is a highly recognized expert in computer forensic digital investigations to assist in reviewing the alleged unauthorized and improper intrusions into computer systems belonging to Plaintiffs.

19. I have learned that in addition to targeting Pasko's laptop, Saiph's employee Noah Davis also targeted the laptop of Jennifer Logee. Logee is Senior Compliance Officer for Brickell Insurance Holdings LLC ("BIH").

20. BIH is a separate business line from SuttonPark. To the best of my knowledge, Logee has never had a role or responsibility with respect to the structured settlements, annuities and lottery winnings that are the collateral for Leadenhall's credit facility to be audited by Saiph.

SGR/71614334.1

Docusign Envelope ID: 0E5388D2-4649-4514-AB29-2A8B776D4A32

21. Plaintiffs' systems and information that Davis accessed (some of which appears to have been altered) would clearly be considered by Leadenhall as potentially useful in prosecuting the Leadenhall Litigation against Plaintiffs.

22. Based on: (i) Leadenhall's aggressive actions and litigation tactics against Plaintiffs; (ii) the targeted access to and attempt to transfer Mr. Pasko's email files; (iii) the timing of at least one incursion in occurring just prior to an important hearing in the Leadenhall Litigation; (iv) Leadenhall's insistence on retaining Saiph specifically, which possessed significant proprietary knowledge about Plaintiffs' operations and computer systems, through its founder (Kosinski) and employee (Davis), in spite of Plaintiffs' objections; (v) the agency relationship between Leadenhall and Saiph, Kosinski, and Davis; and (vi) Saiph's inadvertent acknowledgment of Leadenhall's relationship to these incursions, I believe that it is clear that the actions of Davis were known to and directed by Leadenhall for its benefit in the Leadenhall Litigation.

23. In tasking certain employees of Plaintiffs and engaging Mr. Mazur as outside computer forensics expert to investigate Davis's illegal incursions into their computer systems, Plaintiffs have already expended more than $5,000, and will likely need to spend even more to uncover and remediate the full scope of Davis's illegal activity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 27, 2024.

DocuSigned by:

*Ian Ratner*

9TA3F935476B455...

Ian Ratner

6

SGR/71614334.1