UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-cv-81143-DMM

777 PARTNERS LLC and
SUTTONPARK CAPITAL LLC,

      Plaintiffs,

v.

LEADENHALL CAPITAL PARTNERS LLP,
LEADENHALL LIFE INSURANCE LINKED
INVESTMENT FUND PLC, NOAH DAVIS,
SAIPH CONSULTING LLC, and
PAUL KOSINSKI,

      Defendants.

_____/

## [PROPOSED] ORDER GRANTING PLAINTIFFS' EXPEDITED MOTION FOR A PRELIMINARY INJUNCTION

THIS CAUSE having come before the Court on _____, 2024, on Plaintiffs', 777 Partners LLC ("777 Partners") and SuttonPark Capital LLC ("SuttonPark") (777 Partners and SuttonPark shall collectively be referred to as the "Plaintiffs") Expedited Motion for a Preliminary Injunction and Incorporated Memorandum of Law [D.E. 11] ("Motion"), filed on September 30, 2024, and the Court having reviewed the Motion, the accompanying declarations and exhibits in support of the Motion, the Complaint, and being otherwise fully advised in the premises, finds that the Motion is GRANTED and a preliminary injunction is warranted.

### Background

Plaintiffs, 777 Partners and SuttonPark, brought suit against Defendants Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investment Fund PLC (collectively "Leadenhall"), Saiph Consulting LLC ("Saiph"), Paul Kosinski ("Kosinski"), and Noah Davis

1

("Davis") for Leadenhall's wrongful conduct with respect to Plaintiffs' computer systems. Compl. ¶¶ 18–28.

On May 3, 2024, Leadenhall initiated a New York litigation against Plaintiffs, their former principals, certain affiliates of Plaintiffs, and other third parties alleging civil RICO and fraud claims against Plaintiffs (the "Leadenhall Litigation")—which Plaintiffs dispute.  *See* Declaration of Ian Ratner ("Ratner Decl.") ¶ 7; Compl. ¶ 1.  Leadenhall's allegations are in relation to a secured credit facility provided by Leadenhall to subsidiaries of 777 Partners and guaranteed by 777 Partners. Ratner Decl. ¶ 7.  In the Leadenhall Litigation, Leadenhall alleges that 777 Partners and its affiliates fraudulently inflated the collateral used in connection with the lending facility by including assets that it either did not own or that had already been assigned to other lenders for different loans. Ratner Decl. ¶ 11.

To benefit themselves in the Leadenhall Litigation, Leadenhall used Plaintiffs' former employee—Davis—to gain unauthorized access to Plaintiffs' computer systems. Mazur Decl., Ex. A (Initial Report) at pp. 3–7, 9–16; Compl. ¶ 21.  Although Plaintiffs deactivated Mr. Davis's access credentials to their systems after he ceased to be an employee, not every account or password that Davis had access to was deactivated, allowing Davis to remotely access Plaintiffs' computer systems without permission or authorization. Taheri Decl. ¶ 4; Mazur Decl., Ex. A (Initial Report) at p. 3.  Leadenhall leveraged Davis's knowledge of Plaintiffs' computer systems and their vulnerabilities to gain access to various portions of Plaintiffs' computer systems in at least ten separate incidents between June 28 and August 9, 2024, when unauthorized intrusions were identified for the first time. Mazur Decl., Ex. A (Initial Report) at pp. 3–7.  Following these identified remote intrusions into Plaintiffs' computer systems, on September 5, 2024, Davis entered SuttonPark's offices and left with seven laptops and computer equipment belonging to

2

Plaintiffs. Taheri Decl. ¶¶ 24–31.  On September 11, 2024, Saiph acknowledged that Davis had entered SuttonPark's offices and taken equipment. McCarthy Decl. ¶ 6, Exhibit A (Letter from Harold E. Morlan, III re Noah Davis v.1). There is also surveillance video showing Davis within Plaintiffs' offices between 8 pm and 10 pm on September 5, 2024.  Screenshots from the available video clearly demonstrate Davis's unlawful and unauthorized conduct. Taheri Decl., Exs. A and B.

### The Law

A court may grant a preliminary injunction when the moving party demonstrates: (1) a substantial likelihood that plaintiff will succeed on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if a preliminary injunction is not granted; (3) the threatened injury outweighs the harm a preliminary injunction may cause the defendant; and (4) the granting of a preliminary injunction will not disserve the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Id.*  And that showing of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990); see also *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.").

### Analysis

#### I.  Substantial Likelihood of Success on the Merits

Plaintiffs' Motion alleges that Defendants violated both the CFAA and the CADRA.  *See generally* Mot. at 2.  Since both statutes have similar elements—and because both provide for injunctive relief, see 18 U.S.C. § 1030(g); Fla. Stat. § 668.804(1)(c)—the Court will focus its inquiry on the CFAA.  A CFAA claim has four elements: (1) a defendant intentionally accessed a

protected computer; (2) has done so without authorization or by exceeding authorized access; (3) the defendant thereby obtained information; and (4) the plaintiff suffered damage or loss of at least $5,000.  *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 313 (S.D. Fla. 2018) (citing 18 U.S.C. § 1030(g)).

### a.  Defendants Intentionally "Accessed" Plaintiffs' Protected Computers

Plaintiffs, in short, are very likely to show that Defendants directly or indirectly intentionally accessed Plaintiffs' protected computer systems.  Davis's access was unquestionably intentional, as his remote access to Plaintiffs' computer systems required him to affirmatively log in using credentials and complete a multi-factor authentication procedure utilizing a text message sent to his cellular phone, Taheri Decl. ¶ 13; Mazur Decl. Ex. A (Initial Report) at pp. 9–15, 16– 17.  Moreover, Defendants appeared to have taken and accessed Plaintiffs' laptops and computer equipment as surveillance footage shows that Davis entered an office where the key was kept for the drawer where the laptops were temporarily stored, as well as entering Plaintiffs' server room using a key and leaving that room with Plaintiffs' computer equipment.  Taheri Decl. ¶¶ 29–30, Ex. B.

### b.  Defendants Lacked or Exceeded Authorized Access

The CFAA punishes any individual who "intentionally access[es] a computer without authorization or exceeds authorized access." 18 U.S.C. § 1030(a)(2) (emphasis added).  Although the CFAA does not define "without authorization," it makes clear that "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).  Davis's access to Plaintiffs' computers access was revoked when he ceased to be an employee of 777 Partners on April 26, 2024.  Taheri Decl. ¶¶ 3–31; Mazur Decl. Ex. A (Initial

Report) at p. 3; Compl. ¶ 29. Nor was Davis authorized to access Plaintiffs' computer systems pursuant to his employment with Saiph, as only certain Saiph employees—Kosinski and Boersig—had authorization for a limited audit. Taheri Decl. ¶ 9; Ratner Decl. ¶ 14; Compl. ¶ 20; Mazur Decl. Ex. A (Initial Report) at p. 3. And even if Davis was authorized to access the particular database detailing Leadenhall's collateral within the MP Fin System, Davis exceeded that authorization by accessing information and systems on Plaintiffs' computer network far beyond such database. On these facts, then, Plaintiffs have carried their burden of showing that Defendants acted without authorization—or, at the very least, that they exceeded any authorization given—in accessing Plaintiffs' computers.

### c. Defendants Obtained Information

Plaintiffs are also substantially likely to show that Defendants "obtained information" during their unauthorized excursions. As conclusively demonstrated by Plaintiffs' computer forensic evidence, Davis utilized his unauthorized remote access into Plaintiffs' computer systems to view a broad swath of confidential data and other information contained on Plaintiffs' computer systems, such as: (i) information on both the front- and back-ends on the MP Fin system, (ii) information stored on Ms. Logee's laptop and in her assigned OneDrive account; (iii) information contained on the virtual network of one of 777 Partners' subsidiaries; (iv) accounting and executive data relating to Plaintiffs and other related entities; (v) financial data contained in an SAP database belonging to a former 777 Partners' affiliate; (vi) all of the data from Steven Pasko's, a co-founder and former managing partner of 777 Partners, Microsoft Outlook OST File[1]; and (vii) the information on the 7 laptops which were taken by Davis. Taheri Decl. ¶¶ 3–31; Mazur Decl. Ex. A

---

[1] An OST file, which stands for "offline storage table," is a synchronized copy of an Outlook users' entire mailbox, including all sent items, drafts, calendars, and folders containing emails. Taheri Decl. ¶ 19.

(Initial Report) at pp. 3–7, 9–17. Certainly, Defendants could not have accessed this information without their unauthorized access.

### d. **Plaintiffs Suffered a Loss**

Plaintiffs argue that their investigation into the Defendants' wrongful actions caused them to suffer a "loss" of more than $5,000. The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). A CFAA plaintiff, in other words, "may allege losses related to costs incurred in responding to the violation, assessing its damage, and restoring data and systems to their condition prior to the alleged violation, without having suffered an interruption of services." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017). Under this framework, Plaintiffs' expenses qualify as losses under the CFAA. Plaintiffs appear to have already expended more than $5,000 and will likely need to spend even more to uncover and remediate the full scope of Davis's illegal activity, in addition to the value of the laptops allegedly removed from Plaintiffs' possession.

Moreover, Plaintiffs are likely to succeed in their CFAA claims against Saiph, Kosinski, and Leadenhall, in addition to Davis, because the CFAA also penalizes those who gain indirect access to a protected computer by directing others to engage in unlawful and unauthorized access. *Fla. Atl. Univ. Bd. of Trs.*, 465 F. Supp. 3d at 1291 ("[T]he CFAA does not limit its own reach to 'personal' or 'direct' access. To the contrary, it penalizes even indirect access to a 'protected computer.'" (emphasis in original). Further, "courts have held that an employer can be vicariously liable for an employee's violations of the CFAA if those transgressions occur in the scope of

6

employment or the employer directs the employee's conduct." *Doty v. ADT, LLC*, No. 22-60972-CIV-RS, 2020 WL 9071421, at *8 (S.D. Fla. (Dec. 30, 2020)) (collecting cases).

## II. Irreparable Injury

Plaintiffs says that it will suffer "irreparable injury" if Defendants are permitted to further access Plaintiffs' confidential computer network without authorization and not ordered to return all data or other information thereby acquired as well as the laptops. Federal courts around the country agree that interference with an entity's control of its computer systems constitutes irreparable injury. *See, e.g., TracFone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1256 (S.D. Fla. 2015)); *Reliable Prop. Servs., LLC v. Capital Growth Partners*, *LLC*, 1 F. Supp. 3d 961, 965 (D. Minn. 2014) (finding "substantial threat of irreparable harm" based on the public dissemination of information after the defendant "unlawfully took volumes of detailed data" in violation of the CFAA); *Enargy Power Co. v. Xiaolong Wang*, 2013 WL 6234625, at *10 (D. Mass. Dec. 3, 2013) ("[P]revent[ing] Enargy from enjoying the uninterrupted use of its property ... constitutes irreparable harm. Furthermore, Plaintiffs' inability to make use of the PH Project files has hampered Enargy ...."). Against this backdrop and on the facts presented, the Court concludes that Plaintiffs have satisfied its burden of showing irreparable injury. Were the Court to permit the Defendants to continue accessing Plaintiffs' computers, Plaintiffs could never be certain that it was adequately protecting its proprietary information.

## III. Balance of Hardships

The Court must balance the relative hardship to each side. But the Court need not consider the "hardship" to a defendant whose conduct is "unlawful." *See, e.g.*, *Adams*, 98 F. Supp. 3d at 1256 ("Adams has no legitimate interest in [violating the CFAA]. Adams has never been a TracFone employee, authorized to access TracFone's protected and proprietary systems, or

permitted to sell TracFone products.  Simply put, Adams has absolutely no interest whatsoever in continuing his conduct."); *YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 872 (N.D. Ill. 2000) (the defendants "will suffer no legitimate harm of which they can complain if the [injunctive relief] is granted because they have no honest business hacking [the plaintiff's] system and diverting its customers to [their business]").

Here, the balance weighs decidedly in Plaintiffs' favor.  If an injunction is not issued, Plaintiffs will face significant harm to the security of its systems and data, theft of its secured, proprietary, and/or confidential information and systems.  On the other hand, an injunction would interfere only with the Defendants' unlawful access of Plaintiffs' computer servers—without any concomitant interruption of the Defendants' legitimate business.

### IV.  The Public Interest

The final—or public interest—factor weighs heavily in Plaintiffs' favor.  The CFAA is a criminal statute.  And, it goes without saying, "the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Florida." *Adams*, 98 F. Supp. 3d at 1256.  Since the injunction does nothing more than prevent conduct that Congress has already deemed criminal, it necessarily advances the public interest.

### V.  Bond

Pursuant to Federal Rules of Civil Procedure Rule 65(c), for the Court to issue a preliminary injunction, the movant must provide a "security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The security amount required by the rule is within the discretion of the district court. *See BellSouth Telecomm. Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005).  Because much of the injunction is directed at

8

preventing the Defendants from continuing to violate the law.  And, given that the Defendants cannot—as a matter of law—be wrongfully enjoined from violating the law, most of this injunction requires very little security.  The Court thus orders Plaintiffs to post a bond of $1,000 to protect the Defendants' interests.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.      The Motion for Preliminary Injunction [D.E. 11] is **GRANTED**.

2.      Under Federal Rule of Civil Procedure 65(c), Plaintiffs shall, by October ___, 2024, post a $1,000.00 bond for damages, to which the Defendants may be entitled in the case of a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.  In the Court's discretion, the bond may be subject to increase, in the interest of justice, should an appropriate application be made;

3.      Defendants, and others acting in concert with them, shall be immediately **ENJOINED**, and are required to, until further Order of this Court:

    a. Cease further accessing or attempting to access Plaintiffs' computer systems, either directly or indirectly, for any purpose whatsoever;

    b. Cease reviewing, accessing, copying, or otherwise making use of the data or other information that was acquired through the unauthorized intrusions into Plaintiffs' computer systems;

    c. Defendants are hereby enjoined from destroying, erasing, altering, concealing, spoliating, or otherwise disposing of, in any manner whatsoever, any documents or records that relate to Plaintiffs' Computers, including computer data, electronically stored information, and electronic storage media, including flash drives, hard

drives, backup tapes, and MP3s. The Defendants shall immediately take all steps necessary to preserve and retain such information;

d.   Return of any and all copies of the data or other information, in whatever form they are stored, acquired through the unauthorized incursions into Plaintiffs' computer systems, to Plaintiffs' possession within forty-eight hours from the entry of this order; and

e.   Return any and all equipment belonging to Plaintiffs, including the laptops and other equipment, to Plaintiffs within 48 hours of the entry of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this _____ day of October, 2024.

_____
HONORABLE DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record