UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-cv-81143-DMM

777 PARTNERS LLC and
SUTTONPARK CAPITAL LLC,

    Plaintiffs,

v.

LEADENHALL CAPITAL PARTNERS LLP,
LEADENHALL LIFE INSURANCE LINKED
INVESTMENT FUND PLC, NOAH DAVIS,
SAIPH CONSULTING LLC, and
PAUL KOSINSKI,

    Defendants.
_____/

## **DEFENDANT NOAH DAVIS' MOTION TO DISMISS COMPLAINT**

Defendant Noah Davis, by and through his undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(1) & (6), hereby files this Motion to Dismiss Plaintiffs 777 Partners LLC and Suttonpark Capital LLC's Complaint. (DE 1)

Plaintiffs' Complaint seeks relief pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Stored Communications Act ("SCA"), 18 U.S.C. 2701, Florida's Computer Abuse and Data Recovery Act ("CADRA"), FLA. STAT. § 668.801, *et seq.* (2024), and various common law torts. (DE 1:¶14) For the reasons expressed below, Counts I and IX fail to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), and fail to establish standing, pursuant to Art. III, U.S. Constitution, requiring dismissal. See Fed. R. Civ. P. 12(b)(1).

A federal Court's jurisdiction over the state law claims is entirely dependent upon whether there is subject matter jurisdiction over a related federal claim. Thus, if Plaintiffs have failed to adequately plead their standing to sue for relief under CFAA and SCA, this Court cannot exercise jurisdiction over the state law claims. *See Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999) ("The federal courts of appeals, however, have uniformly held that once the district court determines that subject matter jurisdiction over a plaintiff's federal claims does not exist, courts must dismiss a plaintiff's state law claims."); *Garcia v. Miami Beach Police Dept.*, 336 Fed. Appx. 858, 860 (11th Cir. 2009) ("Where this court has original jurisdiction over a claim, it may exercise supplemental jurisdiction over state law claims related to the federal claim. 28 U.S.C. § 1367(a). Because Garcia lacks standing to bring the § 1983 failure to prosecute claim, however, supplemental jurisdiction is unavailable.")

## I. Overview Of The Factual Allegations

Plaintiffs have alleged that Mr. Davis accessed a variety of computer databases and other repositories of information belonging to 777 Partners and attempted to copy information contained on those systems, as well as claiming he secretly granted himself administrator level access. (DE 1:¶ 3).

Plaintiffs express their uncertainty as to whether Mr. Davis copied or altered important commercial data. (DE 1:¶ 4) ("the full extent of his activities within 777 Partners' systems, including the actual number of illegal incursions, what information *he may have reviewed, copied, altered, or otherwise interfered with, and for what purposes, is not, and may never be, fully known*."); (DE 1:¶ 6) (Plaintiffs allege Mr. Davis *attempted* to transfer email files of Mr. Pasko.); (DE 1:¶ 21) ("Plaintiffs are as yet unsure of the full extent of Davis's activities during

any such incursions, including *potentially copying and/or altering* important commercial data."); (DE 1:¶ 24)  ("Davis attempted to transfer data from Mr. Pasko's Microsoft Outlook OST file.");

In paragraphs 24 through 26, Plaintiffs allege unauthorized access to their computer networks and even the creation of additional credentials for further access. However, Plaintiffs fail to allege, beyond mere supposition, that Mr. Davis <u>successfully obtained, altered or destroyed</u> information within their computer networks. In paragraph 29 of the Complaint, Plaintiffs allege Mr. Davis broke into their facility and removed computer equipment, including removing laptop computers from a locked desk.

In Plaintiffs' first claim for relief, alleging a violation of CFAA, they more definitively allege "Davis obtained extensive confidential and proprietary data that is contained in these computer systems", (DE 1:¶ 34), and "[a]s a result of this unauthorized access, Plaintiffs have or will have to *expend thousands of dollars* in investigating and remediating the consequences of these incursions." (DE 1:¶35)

In Plaintiffs' ninth claim for relief, alleging a violation of SCA, they again allege *an attempt* by Mr. Davis to copy or transfer information contained in Mr. Pasco's Outlook mailbox, but qualify the necessary assertion that he actually obtained electronic communications as being based "upon information and belief". (DE 1:¶¶83-4) Finally, as to the alleged SCA violation, Plaintiffs again state "[a]s a result of this unauthorized access, Plaintiffs have or will have to *expend thousands of dollars* in investigating and remediating the consequences of this incursion." (DE 1:¶85) In paragraph 38, Plaintiffs' do allege they suffered damages "in an amount to be proven at trial (but in no event less than $5,000), plus interest, attorneys' fees, and costs as appropriate", (DE 1:¶38), however, Plaintiffs do not attribute how such damages accrued.

## II. Count I (CFAA) Fails To State A Claim

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint according to the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *See* Fed. R. Civ. P. 12(b)(6). While at this stage, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all the plaintiff's factual allegations, no such deference is to be accorded to statements that are mere conclusions. "A pleading that offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Further, Federal Rule of Civil Procedure 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Plaintiffs' Complaint does not specify which subsection of the CFAA Defendants are alleged to have violated and is devoid of facts attributing how at least $5,000 in loss and/or damage was caused by a violation of CFAA's subsections. *See Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1344 (M.D. Fla. 2014) ("Because of the disjunctive nature of the statute, plaintiffs suing under § 1030(a)(2)(C) and (a)(4) are not required to plead damage in addition to the required amount of loss. Under § 1030(a)(5)(C), however, plaintiffs are required to plead both damage and loss."); *Trademotion, LLC v. Marketcliq, Inc.,* 857 F.Supp.2d 1285, 1292 n. 3 (M.D. Fla. 2012).

Further, as noted above, the Complaint repeatedly expresses Plaintiffs' uncertainty as to whether Defendants actually obtained any data from the alleged unauthorized access. Plaintiffs' allegations that Mr. Davis obtained data from its systems are inconsistent; Plaintiffs repeatedly assert that Davis *attempted* to obtain data, but admit they don't know the extent, size or scope of

any data loss, (*i.e.* whether it happened at all), then state in a conclusory fashion that data was obtained by Defendants. (DE 1:¶¶ 4, 6, 21-4, 34-5)

The CFAA is directed at computer hacking, not theft of computer hardware. The CFAA prohibits *obtaining information* from any protected computer by intentionally accessing such computer without authorization or by exceeding authorized access. 18 U.S.C. § 1030(a)(2). Further, § 1030(a)(5)(C) prohibits intentionally accessing a protected computer without authorization, which causes "damage *and* loss as a result of such conduct." 18 U.S.C. § 1030(a)(5)(C). The term "damage" is defined as meaning "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C.A. § 1030(e)(8).

Thus, there is no violation of 18 U.S.C. § 1030(a)(2) unless information from a protected computer was obtained, and there is no civil remedy for a violation of 18 U.S.C. § 1030(a)(5)(C) unless the offending access of a protected computer has caused both <u>damage and loss</u>. *See Florida Atl. Univ. Bd. of Trustees v. Parsont*, 465 F. Supp. 3d 1279, 1289 (S.D. Fla. 2020) (for violations of § 1030(a)(2): "A CFAA claim has four elements: (1) a defendant intentionally accessed a protected computer; (2) without authorization or exceeding authorized access; and the defendant (3) thereby obtained information; and (4) the plaintiff suffered damage or loss of at least $5,000.00.")

Plaintiff Has Failed To Plead Damages And Loss

The Complaint is devoid of facts attributing how at least $5,000 in loss and/or damage was caused by a violation of CFAA's subsections. The Complaint asserts in a conclusory fashion "As a result of this unauthorized access, Plaintiffs have or will have to expend thousands of

dollars in investigating and remediating the consequences of these incursions." (DE 1:¶ 35) This is insufficient.

> But the CFAA does not provide for recovery of legal expenses, lost profits or other consequential damages untethered to a service interruption or restoration and/or response effort. That makes sense, given that the CFAA prohibits unauthorized *access* to a computer, not misuse of information obtained therefrom. **Plaintiff's single reference to 'the cost of investigating and responding to the unauthorized access' is conclusory and unsupported by factual allegations.** Absent recoverable damages, there can be no CFAA claim.

*Trump v. Clinton*, 626 F. Supp. 3d at 1314–15 (internal citation omitted, emphasis added). *See Ji v. Naver Corp.*, 21-CV-05143-HSG, 2023 WL 6466211, at *11 (N.D. Cal. Oct. 3, 2023), *motion to certify appeal denied,* 21-CV-05143-HSG, 2024 WL 251402 (N.D. Cal. Jan. 23, 2024) ("Because Plaintiffs must allege 'harm to computers or networks, not economic harm due to the commercial value of the data itself" to have proceed on a CFAA claim, the alleged diminution in value of Plaintiffs' data is irrelevant at this stage.'"); *Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *8 (N.D. Cal. Aug. 30, 2019) (explaining that "Plaintiffs do not allege the dollar value of any alleged damages in the FAC, let alone dollar values that could amount to $5,000. In sum, Plaintiffs' bald assertion of $5,000 in damages based on 2-5 minute login delays without any facts to support the allegation is insufficient to sustain a CFAA claim" (quotation omitted)); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1364 (S.D. Cal. 2024) ("But Plaintiffs' allegations of damage or loss are entirely conclusory. The complaint "merely parrots the language of the statute without providing any factual allegations." *James v. Veros Credit, LLC*, 2019 WL 13102877, at *2 (S.D. Cal. 2019). To the extent Plaintiffs suggest that Carnival's interception "deprive[d Plaintiffs] of the economic value of their own information," Plaintiffs' Opposition at 22, Plaintiffs fail to "plausibly allege that they intended to sell their non-disclosed personal information to someone else. Nor, in any event, do they

plausibly allege that someone else would have bought it as a stand-alone product.")

The CFAA Does Not Cover Computer Hardware Stored In A Desk

The term "protected computer" means a computer "*which is used* in or affecting interstate or foreign commerce or communication…." 18 U.S.C. § 1030(e)(2)(B) (emphasis added). Laptops that were stored in a person's desk, especially the ones that had been factory reset were not used in interstate commerce. Consequently, Plaintiffs have no injury addressable by the CFAA for the allegedly stolen laptops. *See Pine Envtl. Services, LLC v. Carson*, 43 F. Supp. 3d 71, 76 (D. Mass. 2014) ("Here, the fact that the Laptop was formerly used in interstate commerce does not make the later deletion of files from that Laptop a crime that is "interstate" in nature. Instead, such actions are appropriately addressed under state law.")

III.     Count IX (SCA) Fails To State A Claim

Plaintiffs' claim for relief under the SCA failed to sufficiently allege Defendants obtained access to wire or electronic communications while it was in electronic storage in such system, or altered such, or prevented its authorized access. Plaintiffs alleged Mr. Davis attempted to access the "offline storage table" on Mr. Pasko's laptop. (DE 1:¶¶ 24, 83) Further, Plaintiffs inappropriately assert that "Davis obtained the electronic communications of Mr. Pasko while in electronic storage in his Outlook mailbox" based upon Plaintiffs' "information and belief". (DE 1:¶84) Yet, pleading on information in belief is only still permissible where "the facts are 'peculiarly within the possession and control of the defendant.'" *Belik v. Carlson Travel Group, Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010)). For Plaintiffs to base the crux of their claim for violating the SCA upon such pure conjecture, is too speculative to base a claim where Plaintiffs otherwise claim to whether data was obtained.

To state a claim under the SCA, Plaintiffs must allege that Defendants accessed without authorization "a facility through which an electronic communication service is provided….and thereby <u>obtain[ed], alter[ed], or prevent[ed] authorized</u> access to a wire or electronic communication while it is in electronic storage" 18 U.S.C. § 2701(a)(1). An "electronic communication service" ("ECS") is "any service which provides to users thereof the ability to send and receive wire or electronic communications." 18 U.S.C. § 2510(15). The term "facility" is undefined by the SCA, however, in *Brown Jordan Int'l, Inc. v. Carmicle*, the Eleventh Circuit COA relied on the Oxford English Dictionary definition, which "includes 'the physical means or equipment for doing something,' Oxford English Dictionary Online, http://www.oed.com/viewdictionaryentry/Entry/67465." 846 F.3d 1167, 1178 (11th Cir. 2017).

18 U.S.C. § 2707(a) provides a civil remedy for "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind…" 18 U.S.C. § 2707(a).

Plaintiffs describe themselves as a private investment firm and corporate affiliate, (DE 1:¶¶ 7-8), not an electronic communication service. An investment firm's laptop holding an offline copy of an email account is not "a facility through which an electronic communication service is provided". *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012) ("While the computer systems of an email provider, a bulletin board system, or an ISP are uncontroversial examples of facilities that provide electronic communications services to multiple users, less consensus surrounds the question presented here: whether an individual's computer, laptop, or mobile device fits the statutory definition of a 'facility through which an electronic communication service is provided.' The Court agrees with Defendants that it does

not."); *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1316–17 (S.D. Fla. 2022) ("Plaintiff alleges that here, such facilities include the 'computers, networks and/or servers' of his personal residence, the EOP, and Trump Organization. Based on the foregoing, Plaintiff's personal devices are not a qualifying facility. Nor can I plausibly infer from the overbroad invocation of 'computers, networks and/or servers' that such devices of the EOP and Trump Organization are equipment through which electronic communication services are provided, akin to a centralized remote data bank operated by an internet service provider or the like.") (internal citation omitted).

### IV. Plaintiffs' Complaint Fails To Establish Standing To Sue Under The CFAA And SCA

Generally, to establish standing a Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016), *as revised* (May 24, 2016). The Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements. *Id*. (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). At the pleading stage, a plaintiff must clearly allege facts demonstrating each element. *Id*. Further, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)).

The fact that Plaintiffs have sued claiming violations of two federal statutes is insufficient in itself to satisfy standing. The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. at 426 (quoting *Spokeo*, 578 U. S., at 341). *Spokeo, Inc.*, 578 U.S. at

341 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.")

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc*, 578 U.S. at 338–39 (quoting *Raines v. Byrd,* 521 U.S. 811, 820 n.3 (1997)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–560 (1992)). *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) ("In no event ... may Congress abrogate the Art. III minima"). A "concrete injury" is one that must actually exist, requiring an injury that is "real" and "not abstract". *Spokeo Inc.*, at 340-41. "[T]he requirement that an injury be concrete is "essential to the Constitution's separation of powers" because it ensures that plaintiffs have a real stake in the actions they bring; it confines the courts to the business of deciding disputes between parties." *Hunstein v. Preferred Collection & Mgmt. Services, Inc.*, 48 F.4th 1236, 1242–43 (11th Cir. 2022).

There are special rules for determining whether a plaintiff has suffered an injury in fact for intangible harm in violation of a statute purporting to provide a private cause of action. For example, a "bare statutory violation", divorced from any concrete harm, is not enough, "no matter how beneficial we may think the statute to be." *Hunstein*, 48 F.4th at 1242-43. "Various

intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC,* 594 U.S. at 425.

In *Hunstein*, the Eleventh Circuit COA provided the following synthesis of the Supreme Court's opinions in TransUnion and Spokeo regarding intangible harms.

> It reemphasized that, for intangible harms, **analogizing to longstanding torts is an important way to determine whether an alleged intangible injury meets the concreteness requirement**. Particularly relevant here, it put more meat on the bones of that approach, adding that **when an element "essential to liability" at common law is missing from an alleged harm, the common-law comparator is not closely related to that harm**. As the Court explained, a theory that "circumvents a fundamental requirement" of an analogous common-law tort "does not bear a sufficiently 'close relationship' " to establish standing.

*Hunstein*, at 1244 (internal citations omitted).

In *In re Am. Online, Inc.*, 168 F. Supp. 2d 1359 (S.D. Fla. 2001), the court analyzed whether the CFAA incorporated the common law tort of trespass, albeit not for determining standing.

> The consumers contend that, insofar as the CFAA is similar to the common law crime of trespass, the court must assume that Congress meant to include situations of exceeded access when it used the phrase "access without authorization."…This argument is without merit because "[t]he canon of imputing common-law meaning applies only when Congress makes use of a statutory term with established meaning at common law...." The statute at issue in this case, the CFAA, does not contain the common law term "trespass." Additionally, "exceeds authorized access" is specifically defined in the CFAA. Accordingly, the "cluster of ideas" associated with common law "trespass" cannot be imported into the CFAA.

*Id*. at 1371 n.8 (internal citation omitted).

What is clear from the decisional law on this issue is that for a standing analysis, interpreting harm and injury under SCA or the CFAA *as Congress defined it under the statute,* results in nothing more than a bare statutory violation – which is not enough to confer standing under *TransUnion.* As stated above, Plaintiffs bear the burden of proving standing, thus, the burden of production and persuasion on this issue falls on them.

WHEREFORE, Defendant Noah Davis moves to Dismiss Counts I and IX for failure to state a claim and lack of standing. In the event the Court dismisses Counts I and IX for lack of standing, and all other state law claims should also be dismissed.

Date: October 25, 2024

Respectfully submitted,

\_\_\_/s/ Leonard Feuer\_\_\_\_\_
Leonard S. Feuer
Florida Bar No.: 501751
Leonard Feuer, P.A.
500 S. Australian Avenue, Suite 500
West Palm Beach, FL 33401
E-mail: lfeuer@feuerlawfirm.com
Telephone:   (561) 659-1360
Fax:              (561) 249-4100

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

\_\_\_\_\_s/ Leonard S. Feuer_____
Leonard S. Feuer, Esq.
Florida Bar No.: 501751