**EXHIBIT H**

# CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is made as of May 28th, 2024 (the "Effective Date") by and among Saiph Holdco LLC d/b/a Saiph Group LLC, a Delaware Limited Liability Company ("Company") and The Tyler Durden Group, LLC ("Consultant"), a Florida Limited Liability  Company. Each of the parties may be referred to as a "Party" and collectively as the "Parties".

## I. SERVICES TO BE PERFORMED BY CONSULTANT.

### Specific Services

I.1.    Consultant, acting independently and not as an employee of Company, on an exclusive basis, agrees to provide the services set forth on the attached Schedule A (the "Services") to Company.

I.2.    Consultant warrants that the Services will be performed in a professional, timely and workmanlike manner without the advice or direction, as applicable, of Company. Further, Consultant will discharge its duties under this Agreement in the best interests of Company and shall do so with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims and that it exercises in the conduct of its own business (the "Standard of Care").

I.3.    Company acknowledges that Consultant's success in performing the services depends on the participation, cooperation, and support of the Company's employees, including without limitation its most senior management.  Company warrants that all information provided to Consultant in connection with its Services will be true and correct in all material respects.

I.4.    Company acknowledges that the Consultant's role is limited in scope. Consultant is not an employee, manager, officer or director of the Company.  Consultant will have no authority or control over the employees of the Company. Consultant will not sign any documents on behalf of the Company.

### Method of Performing Services

I.5.    Except as otherwise provided, Consultant will determine the method, details, and means of performing the Services. Consultant may perform the Services under this Agreement at any suitable time and location it chooses.

I.6.    Consultant shall devote such working time and attention to the performance of the Services as required to satisfy the Standard of Care and all duties and responsibilities of Consultant as set forth herein.

I.7.    Company agrees that certain deliverables, such as reports, projections or forecasts, may be prepared based upon the Company's estimates and judgment.  Consultant makes no representation or warranty as to the accuracy or reliability of such items derived from use of the information provided by the Company, and Consultant will not be liable for any claims of reliance on such items and information.

1

ORLDOCS 19547459 6

EXHIBIT "H"

## II. TERM OF CONTRACT AND TERMINATION.

### Term

II.1. This Agreement will become effective on the Effective Date and will continue in effect, unless terminated early as provided below, for three (3) months, which may be extended with the mutual written consent of the Parties (the "Term").

### Early Termination

II.2. Either Party may terminate this Agreement with or without cause, at any time upon 30 days' prior written notice to the other Party.

### Return of Materials

II.3. Upon expiration or termination of this Agreement or as otherwise requested by Company, at Company's expense, Consultant will deliver to Company copies of any requested records or materials in possession of Consultant relating to the Services.

## III. COMPENSATION AND EXPENSES.

III.1. In full consideration for the Services described in this Agreement to be performed by Consultant, Company agrees to pay Consultant as set forth below:

(1) *Fee.* A consulting fee (the "Consulting Fee") equal to $42,000, payable in 6, bi-monthly installments of $7,000 due the 15th and 30th of each month (or next business day), from June 15th, 2024 through and including August 30th, 2024

*(2) Expenses.* All pre-approved travel expenses incurred by Consultant in connection with this Agreement shall be reimbursed on a timely basis following receipt of appropriate supporting documentation for such expenses.

III.2. Except as otherwise provide for herein, Consultant will be responsible for all expenses incurred in performing the Services under this Agreement. The provisions of this Article III shall survive the Term.

## IV. KEY PROVISIONS.

### Consultant is Independent Consultant

IV.1. Consultant enters into this Agreement, and will remain throughout the term of this Agreement, as an independent contractor. Consultant agrees that neither Consultant nor any Consultant personnel is or will become an employee, partner, agent, or principal of Company while this Agreement is in effect. This Agreement does not in any way create any type of partnership, association, joint venture, or other business relationship. Consultant agrees neither Consultant nor any Consultant personnel shall be entitled to the rights or benefits afforded to Company's employees, including but not limited to, disability or unemployment insurance, workers' compensation, medical or life insurance, sick leave, compensation time, overtime, retirement or holiday benefits, vacation time, profit sharing, bonuses, or any other employment benefit. Consultant is responsible for providing, at its own expense, disability, unemployment, and other insurance, workers' compensation, training, permits, licenses, and any other requirement for Consultant and, as applicable, for Consultant's personnel.

2

ORLDOCS 19547459 6

IV.2.  Nothing in this Agreement shall be construed to give Consultant or any Consultant personnel any authority (i) to represent that such person is an employee of Company, (ii) to bind Company with respect to contracts or representations or any other matters, or (iii) to represent Company before any court or government or regulatory authority without the express written authorization of Company.

**Exclusive Relationship**

IV.3.  Consultant, and/or its personnel, may not represent, perform services for, nor contract with additional clients, persons, or companies during the Term of this Agreement.

**Payment of Taxes and Fees**

IV.4.  Consultant is solely responsible for paying when due any taxes, including estimated taxes, incurred as a result of the compensation paid by Company to Consultant for Services under this Agreement. This includes but is not limited to any federal, state or local income taxes, social security or unemployment tax, or any other taxes. No part of Consultant's compensation will be subject to withholding by Company for the payment of any social security, federal, state or any other employee payroll taxes.

**Limitation of Liability**

IV.5.  Consultant will not be liable in any event for incidental, consequential, punitive, or special damages, including without limitation, any interruption of business or loss of business, profit, or goodwill.

V.**PROPRIETARY RIGHTS.**

V.1.  Consultant agrees that all systems, plans, reports, spreadsheets, drawings, processes, and other information or items produced by Consultant expressly for delivery to Company in connection with Consultant performing Services under this Agreement, including any copyrights, trade secrets, trademarks, or other intellectual property, will be assigned to Company as the sole and exclusive property of Company and Company's assigns, nominees, and successors. However, Consultant shall have exclusive ownership of all underlying methodologies, formulas, copyrights and know-how used to create any such deliverables. The Parties deem the compensation described in this Agreement to be valid consideration for those assignments.

VI.**CONFIDENTIAL INFORMATION.**

VI.1.  Consultant agrees to perform its duties hereunder with significant attention to discretion and confidentiality to protect Company.  Consultant agrees to keep all Company communications (including e-mail), reports, and documents, including any deliverables, and any other information Company discloses to Consultant (the "Confidential Information") confidential.  Consultant will use the Confidential Information only to perform its obligations under this Agreement and will use the same measures to protect Confidential Information as it uses to protect its own Confidential Information, but in any event will use no less than a reasonable degree of care under the circumstances.

VI.2.  Confidential Information does not include information that (x) is or becomes publicly available through no act or omission of Consultant, (y) is disclosed to Consultant by a

3

DocuSign Envelope ID: 8A0C2238-7091-4819-967C-87E2323C3358

third party without restrictions on disclosure, or (z) was in Consultant's lawful possession prior to the disclosure and was not obtained by Consultant either directly or indirectly from Company.  In addition, this section will not be construed to prohibit disclosure of Confidential Information to the extent that such disclosure is required by law, rule or regulation or valid order of a court or other governmental authority or in connection with a dispute hereunder.

VI.3. During and after the Term, the Parties will keep the terms and existence of this Agreement confidential.

## VII. NONSOLICITATION.

VII.1. Consultant agrees that during the Term of this Agreement, and for one year thereafter, Consultant will not, either directly or indirectly, solicit or attempt to solicit any employee, independent contractor, or consultant of Company to terminate his, her or its relationship with Company in order to become an employee, consultant, or independent contractor to or for Consultant or any other person or entity.

## VIII. GENERAL PROVISIONS.

**Notices**

VIII.1. All notices and other communications pursuant to this Agreement must be in writing and will be deemed to have been duly delivered and received (i) four business days after being sent by registered or certified mail, return receipt requested, postage prepaid; (ii) one business day after being sent for next business day delivery, fees prepaid, via a reputable nationwide overnight courier service; (iii) if sent by e-mail in portable document format (PDF) or similar electronic attachment (A) on a business day before 5:00 p.m. in the time zone of the receiving Party, when transmitted and the sender has received confirmation of receipt by the recipient and (B) on a day other than a business day or after 5:00 p.m. in the time zone of the receiving Party, and the sender has received confirmation of receipt by the recipient, on the following business day; or (iv) immediately upon delivery by hand or by fax (with a written or electronic confirmation of delivery), in each case to the intended recipient as set forth below:

If to Consultant, to:

Noah Davis

The Tyler Durden Group, LLC

7935 CHULA VISTA CRESCENT

BOCA RATON, FL 33433

E-mail: noahldavis@gmail.com

If to Company, to:

Paul Kosinski

4

> Saiph Consulting LLC
>
> 600 W Hillsboro Blvd, Suite 601
>
> Derfield Beach, FL 33441
>
> E-mail: paul@saiphconsulting.com

**Entire Agreement; Modifications**

VIII.2. This Agreement supersedes any and all agreements, either oral or written, between the Parties with respect to the rendering of Services by Consultant for Company and contains all of the representations, warranties, covenants, and agreements between the Parties with respect to the rendering of the Services. Each Party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any Party, or anyone acting on behalf of any Party, which are not contained in this Agreement, and that no other agreement, statement, or promise not contained in this Agreement will be valid or binding. Any modification of this Agreement will be effective only if it is in a writing signed by an authorized representative of the Party to be charged.

**Assignment**

VIII.3. Neither Party shall assign any rights or delegate any duties hereunder without the prior written consent of the other Party, in its sole discretion; provided, however, that the obligation of Company shall automatically be binding upon any successors of the Company if Company is no longer continuing to engage in the same business as the date hereof.

**Partial Invalidity**

VIII.4. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions will continue in full force and effect without being impaired or invalidated in any way.

**Governing Law**

VIII.5. This Agreement, and any dispute arising out of, relating to, or in connection with this Agreement, shall be governed by and construed in accordance with the Laws of the State of Florida, without giving effect to any choice or conflict of Law provision or rule (whether of the State of Florida or of any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Florida.

**Consultant Representations**

VIII.6. Consultant warrants that it is legally capable of entering this Agreement and that there are no other existing agreements or instruments that would impair Consultant's ability to perform the Services described in this Agreement.

**Force Majeure**

VIII.7. Neither Party shall be liable hereunder for any failure or delay in the performance of its obligations under this Agreement if such failure or delay is on account of causes beyond its control, including labor disputes, civil commotion, war, fires, floods, inclement weather, governmental regulations or controls, casualty, government authority, strikes,

5

DocuSign Envelope ID: 8A0C2238-7091-4819-967G-87E2323C3358

pandemics, epidemics, local disease outbreaks, public health emergencies, quarantines, or acts of God, in which event the non-performing Party shall be excused from its obligations for the period of the delay and for a reasonable time thereafter. Each Party shall use reasonable efforts to notify the other Party of the occurrence of such an event within five (5) business days of its occurrence.

**Waiver: Rights Cumulative**

VIII.8. No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving Party. The failure of either Party to enforce any provision of this Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter. The rights and remedies of the Parties herein provided shall be cumulative and not exclusive of any rights or remedies provided by law or equity.

**Construction**

VIII.9. Every covenant, term and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any Party hereto.  This Agreement shall not be construed against either Party by virtue of a Party being deemed the drafter hereof.  The article and section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of the Agreement.  All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the party or parties, or their personal representatives, successors and assigns may require.

**Dispute Resolution**

VIII.1. Exclusive venue for any proceeding arising between the parties in any manner pertaining or related to this Agreement shall, to the extent permitted by law, be in the federal courts of the Southern District of Florida and/or the state courts located in Palm Beach County, Florida, and each party consents to the jurisdiction of the foregoing courts

VIII.2. Amounts due hereunder but not paid when due shall incur a late fee of 1.5% per month until paid.

VIII.3. If any Party hereto is required to engage in litigation or other legal proceeding against any other Party hereto, either as plaintiff or as defendant, in order to enforce or defend any rights under this Agreement, and such process results in a final judgment or ruling in favor of such Party ("Prevailing Party"), then the Party against whom said final judgment or ruling is obtained shall reimburse the Prevailing Party for all direct, indirect or incidental expenses incurred, including, but not limited to, all attorneys' fees (including paralegal fees), court costs and other expenses incurred throughout all negotiations, proceedings, trials or appeals undertaken in order to enforce the Prevailing Party's rights hereunder, including without limitation those related to determining the amount thereof and/or the right thereto.

VIII.4. WAIVER OF TRIAL BY JURY.  THE PARITES EACH AGREE THAT, IN ANY ACTION OR PROCEEDING BROUGHT BY ANY PARTY AGAINST ANOTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF, RELATING TO, OR BY VIRTUE OF THE TERMS OF, THIS AGREEMENT, THE PARTIES SHALL, AND

6

DocuSign Envelope ID: 8A0C2238-7091-4819-967C-87E2323C3358

DO HEREBY, ABSOLUTELY AND UNCONDITIONALLY, WAIVE THEIR RIGHT TO A TRIAL BY JURY.

**Survival**

X.2.  Any provisions hereof which by their nature would be intended to survive the Term, and including without limitation Articles 3, 5, 6, 7, 8, 9 & this 10, will survive any termination or expiration of this Agreement.

**Counterparts**

X.3.  This Agreement may be executed by facsimile and in one or more counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument, without necessity of production of the others.

[THIS SPACE INTENTIONALLY LEFT BLANK]

ORLDOCS 19547459 6

DocuSign Envelope ID: 8A0C2238-7091-4819-967C-87F2323C3358

IN WITNESS WHEREOF, the Parties hereto have executed this Consulting Agreement on the date set forth below, and effective as of the date first set forth above.

COMPANY:

Saiph Holdco LLC, d/b/a Saiph Group LLC

By: _____
2B90EE4F2C9B492...

Name: Paul Kosinski

Title: Chief Executive Officer

Date: 5/24/2024

CONSULTANT:

The Tyler Durden Group, LLC

By: _____
045DC4D1AA7F4C4...

Name: Noah Davis

Title: Manager

Date: 5/23/2024

8

ORLDOCS 19547459 6

DocuSign Envelope ID: 8A0C2238-7901-4810-967C-87F2323C3358

Schedule A

Services

Consultant will focus on the creation and implementation of an asset servicing system for Company, including (but not limited to) the following functions:

Software Development

- Spearheading the development of Company and its client's servicing software initiatives, ensuring best practices
- Ensuring integration with existing systems and third-party services

Data Migration and Management

- Planning and executing the migration of existing data to the new system
- Ensuring data integrity, security, and compliance during the migration process
- Implementing data management and backup strategies

User Training and Support

- Developing training materials and conducting training sessions for end-users
- Providing ongoing support to users during the transition to the new software

Change Management

- Developing a change management plan to ensure smooth adoption of the new software
- Communicating changes effectively to all stakeholders
- Managing resistance and ensuring user buy-in
- Post-Implementation Review and Optimization

9

ORLDOCS 19547459 6