# Exhibit 2

# Redacted

**AMENDED CONSULTING AGREEMENT**

This Amended Consulting Agreement ("Agreement") is made as of June 7, 2024 (the "Effective Date") by and among Leadenhall Capital Partners LLP, a Limited Liability Partnership registered in England and Wales ("Administrative Agent") and Saiph Consulting LLC ("Consultant"), a Delaware limited liability company. Each of the parties may be referred to as a "Party" and collectively as the "Parties".

## I.SERVICES TO BE PERFORMED BY CONSULTANT.

**Specific Services**

I.1.    Consultant, acting independently and not as an employee of Administrative Agent, and on a non-exclusive basis, agrees to provide the services set forth on the attached Schedule A as well as such other and further services as may be agreed between the Consultant and the Administrative Agent (collectively, the "Services") to Administrative Agent.

I.2.    Consultant represents and warrants that the Services will be performed in a professional, timely and workmanlike manner without the advice or direction, as applicable, of Administrative Agent. Further, Consultant will discharge its duties under this Agreement in the best interests of Administrative Agent and shall do so with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims and that it exercises in the conduct of its own business (the "Standard of Care").

I.3.    Administrative Agent acknowledges that Consultant's success in performing the services depends on the participation, cooperation, and support of the Administrative Agent's employees, including without limitation its most senior management. Administrative Agent warrants that all information provided to Consultant in connection with its Services will be true and correct in all material respects.

I.4.    Administrative Agent acknowledges that the Consultant's role is limited in scope. Consultant is not an employee, manager, officer or director of the Administrative Agent. Consultant will have no authority or control over the employees of the Administrative Agent. Consultant will not sign any documents on behalf of the Administrative Agent.

I.5.    Administrative Agent acknowledges that neither the Consultant nor its principals, employees, agents and/or representatives (collectively, "Representatives") is a "broker" or "dealer" within the meaning of Section 3(a)(4) of the Securities Exchange Act of 1934, as amended, or any state laws, is not registered under the Investment Advisors Act of 1940, or any other federal or state laws, and agrees that the Services expressly exclude any services which Consultant reasonably believes might cause it or its Representatives to be required to register as a broker/dealer and/or investment advisor.

**Method of Performing Services**

I.6.    Except as otherwise provided herein, Consultant will determine the method, details, and means of performing the Services. Consultant may perform the Services under this Agreement at any suitable time and location it chooses subject to the requirements set forth in Section 5.02 of that certain Loan and Security Agreement, dated as of May 7, 2021, by and among the borrowers from time to time party thereto, the lenders from time to time party thereto, the servicers from time to time party thereto, the sellers from time to time party thereto, the Administrative Agent and Leadenhall Life Insurance Linked Investments Fund PLC (as amended, restated or otherwise modified from time to time, the "Loan and Security Agreement").

I.7.    Consultant shall devote such working time and attention to the performance of the Services as required to satisfy the Standard of Care and all duties and responsibilities of Consultant as set forth herein.

I.8.    Administrative Agent agrees that certain deliverables, such as reports, projections or forecasts, may be prepared based upon the Administrative Agent's estimates and judgment. Consultant makes no representation or warranty as to the accuracy or reliability of such items derived from use of the information provided by the Administrative Agent, and Consultant will not be liable for any claims of reliance on such items and information.

## II. TERM OF CONTRACT AND TERMINATION.

**Term**

II.1.   This Agreement shall remain in effect until either Party provides written notice of termination to the other Party. Such notice shall be given no less than 30 days prior to the intended termination date (the "Term").

**Return of Materials**

II.2.   Upon expiration or termination of this Agreement or as otherwise requested by Administrative Agent, at Administrative Agent's expense, Consultant will deliver to Administrative Agent copies of any requested records or materials in possession of Consultant relating to the Services.

## III. COMPENSATION AND EXPENSES.

III.1.  In full consideration for the Services described in this Agreement to be performed by Consultant, Administrative Agent agrees to pay Consultant as set forth below:

(1)  *Fee.* A consulting fee (the "Consulting Fee") calculated on the basis of:



-

-

[REDACTED]

███ of the Consulting Fee is payable upon presentation of invoices within █ business days of execution of this agreement and the remaining ███ payable upon presentation of invoices within █ business days of the earliest of (i)

[REDACTED]

[REDACTED]

(2) *Expenses.* All reasonable travel expenses incurred by Consultant in connection with this Agreement shall be reimbursed on a timely basis following receipt by the Administrative Agent of appropriate supporting documentation for such expenses within 30 days of the date on which such expenses were incurred.

III.2.  Except as otherwise provide for herein, Consultant will be responsible for all expenses incurred in performing the Services under this Agreement. The provisions of this Article III shall survive the Term.

## IV. KEY PROVISIONS.

**Consultant is Independent Consultant**

IV.1.  Consultant enters into this Agreement, and will remain throughout the term of this Agreement, as an independent contractor. Consultant agrees that neither Consultant nor any Consultant personnel is or will become an employee, partner, agent, or principal of Administrative Agent while this Agreement is in effect. This Agreement does not in any way create any type of partnership, association, joint venture, or other business relationship. Consultant agrees neither Consultant nor any Consultant personnel shall be entitled to the rights or benefits afforded to Administrative Agent's employees, including but not limited to, disability or unemployment insurance, workers' compensation, medical or life insurance, sick leave, compensation time, overtime, retirement or holiday benefits, vacation time, profit sharing, bonuses, or any other employment benefit. Consultant is responsible for providing, at its own expense, disability, unemployment, and other insurance, workers' compensation, training, permits, licenses, and any other requirement for Consultant and, as applicable, for Consultant's personnel.

IV.2.  Nothing in this Agreement shall be construed to give Consultant or any Consultant personnel any authority (i) to represent that such person is an employee of Administrative Agent, (ii) to bind Administrative Agent with respect to contracts or representations or any other matters, or (iii) to represent Administrative Agent before any court or government or regulatory authority without the express written authorization of Administrative Agent.

**Non-Exclusive Relationship**

IV.3.  Consultant, and/or its personnel, may represent, perform services for, and contract with as many additional clients, persons, or companies as Consultant, in its sole discretion, sees fit, provided those services do not pose a conflict of interest with the Services performed for Administrative Agent. For the avoidance of doubt, any engagement by 777 Partners

LLC, 600 Partners, LLC , Sutton Park Capital, LLC, ACAP Capital Holdings LLC, B Riley  or any subsidiary thereof shall constitute a conflict of interest with the Services performed for the Administrative Agent.

**Payment of Taxes and Fees**

IV.4.   Consultant is solely responsible for paying when due any taxes, including estimated taxes, incurred as a result of the compensation paid by Administrative Agent to Consultant for Services under this Agreement. This includes but is not limited to any federal, state or local income taxes, social security or unemployment tax, or any other taxes. No part of Consultant's compensation will be subject to withholding by Administrative Agent for the payment of any social security, federal, state or any other employee payroll taxes.

**Limitation of Liability**

IV.5.   Neither Consultant nor Administrative Agent will be liable in any event for incidental, consequential, punitive, or special damages, including without limitation, any interruption of business or loss of business, profit, or goodwill.

## V.INDEMNIFICATION

V.1.   Administrative Agent will indemnify, defend, and hold harmless Consultant, its officers, directors, members, managers, employees and agents from and against any and all damages, losses, claims, actions, causes of action, costs, liabilities and expenses, including reasonable and documented attorneys' fees and costs (collectively, the "Losses") in connection with any third-party claim, penalty, fine, action, or proceeding, including any governmental or regulatory investigations or related matters, which are based on, related to or arising out of Consultant's performance of its Services under this Agreement; provided however, if the Losses are primarily the result of the Consultant's gross negligence, bad faith, fraud or intentional misconduct, the Administrative Agent shall not be obligated to provide the indemnification set forth in this Section 5.1. The provisions of this Section shall survive the Term.

## VI.PROPRIETARY RIGHTS.

VI.1.   Consultant agrees that all plans, reports, spreadsheets, drawings, processes, and other information or items produced by Consultant in connection with Consultant performing Services under this Agreement, including any copyrights, trade secrets, trademarks, or other intellectual property, will be assigned to Administrative Agent as the sole and exclusive property of Administrative Agent and Administrative Agent's assigns, nominees, and successors. However, Consultant shall have exclusive ownership of all underlying methodologies, formulas, copyrights and know-how used to create any such deliverables. The Parties deem the compensation described in this Agreement to be valid consideration for those assignments.

## VII.CONFIDENTIAL INFORMATION.

VII.1.  Consultant agrees to perform its duties hereunder with significant attention to discretion and confidentiality to protect Administrative Agent. Consultant agrees to keep all Administrative Agent communications (including e-mail), reports, and documents, including any deliverables, and any other information Administrative Agent discloses to Consultant (the "Confidential Information") confidential. Consultant will use the Confidential Information only to perform its obligations under this Agreement and will use the same measures to protect Confidential Information as it uses to protect its own Confidential Information, but in any event will use no less than a reasonable degree of care under the circumstances.

VII.2.  Confidential Information does not include information that (x) is or becomes publicly available through no act or omission of Consultant, (y) is disclosed to Consultant by a third party without restrictions on disclosure, or (z) was in Consultant's lawful possession prior to the disclosure and was not obtained by Consultant either directly or indirectly from Administrative Agent. In addition, this section will not be construed to prohibit disclosure of Confidential Information to the extent that such disclosure is required by law, rule or regulation or valid order of a court or other governmental authority or in connection with a dispute hereunder.

VII.3.  During and after the Term, the Parties will keep the terms and existence of this Agreement confidential.

## VIII. NONSOLICITATION.

VIII.1. Administrative Agent agrees that



VIII.2. Consultant agrees that

## IX. GENERAL PROVISIONS.

**Notices**

IX.1.  All notices and other communications pursuant to this Agreement must be in writing and will be deemed to have been duly delivered and received (i) four business days after being sent by registered or certified mail, return receipt requested, postage prepaid; (ii) one business day after being sent for next business day delivery, fees prepaid, via a reputable nationwide overnight courier service; (iii) if sent by e-mail in portable document format (PDF) or similar electronic attachment (A) on a business day before 5:00 p.m. in the time zone of the receiving Party, when transmitted and the sender has received confirmation of receipt by the recipient, on such business day and (B) on a day other than a business day or after 5:00 p.m. in the time zone of the receiving Party, and

the sender has received confirmation of receipt by the recipient, on the following business day; or (iv) immediately upon delivery by hand or by fax (with a written or electronic confirmation of delivery), in each case to the intended recipient as set forth below:

If to Consultant, to:



If to Administrative Agent, to:

**Entire Agreement; Modifications**

IX.2.  This Agreement is an amendment of and supplement to that ▮▮▮▮▮ ▮▮▮▮▮ between the Parties and it supersedes any and all agreements, either oral or written, between the Parties with respect to the rendering of Services by Consultant for Administrative Agent and contains all of the representations, warranties, covenants, and agreements between the Parties with respect to the rendering of the Services. Each Party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any Party, or anyone acting on behalf of any Party, which are not contained in this Agreement, and that no other agreement, statement, or promise not contained in this Agreement will be valid or binding. Any modification of this Agreement will be effective only if it is in a writing signed by an authorized representative of the Party to be charged.

**Assignment**

IX.3.  Neither Party shall assign any rights or delegate any duties hereunder without the prior written consent of the other Party, in its sole discretion; provided, however, that the obligation of Administrative Agent shall automatically be binding upon any successors of the Administrative Agent if Administrative Agent is no longer continuing to engage in the same business as the date hereof.

**Partial Invalidity**

IX.4.  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions will continue in full force and effect without being impaired or invalidated in any way.

**Governing Law**

IX.5.   THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO ITS CONFLICT OF LAWS PROVISIONS (OTHER THAN §§5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW)).

**Consultant Representations and Warranties**

IX.6.   Consultant is, and shall at all times during the term of this Agreement be, a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware; and in possession of all necessary licenses and approvals in all jurisdictions where failure to be so qualified and in good standing would have a material adverse effect on Consultant's business and operations or its ability to provide the Services contemplated by this Agreement.

IX.7.   The execution, delivery, and performance of this Agreement have been duly authorized by all necessary action by Consultant. This Agreement has been duly and validly executed and delivered on behalf of Consultant and is binding upon and enforceable against Consultant in accordance with its terms, except as enforceability may be limited or affected by applicable bankruptcy, insolvency, reorganization, or other laws of general application relating to or affecting the rights of creditors, and except as enforceability may be limited by rules of law governing specific performance, injunctive relief, or other applicable remedies.

IX.8.   Neither the execution and delivery of this Agreement by Consultant nor the consummation of the transactions contemplated hereby will (i) violate any applicable law, judgment, order, decree, regulation, or ruling of any governmental authority or violate any provision of the certificate of formation or limited liability company agreement of Consultant, (ii) either alone or with the giving of notice or the passage of time or both, conflict with, constitute grounds for termination of, result in the breach of the terms, conditions, or provisions of or constitute a default or result in the imposition of any lien upon Consultant's properties under any agreement, instrument, license, or permit to which Consultant is a party or by which it is bound or (iii) require any consent, approval, authorization or order of or declaration or filing with any governmental authority. There are no proceedings or investigations pending, or to the knowledge of Consultant, threatened against Consultant that might materially and adversely affect the execution and delivery of this Agreement by Consultant or the consummation of the transactions contemplated hereby.

IX.9.   Consultant has operated, and shall at all times during the term of this Agreement operate, its business in accordance with all applicable laws and regulations and Consultant is not and will not during the term of this Agreement be in violation of any such laws or regulations other than such violations which singly or in the aggregate do not and, with the passage of time will not, have a material adverse effect on its business or assets or its ability to perform its obligations under this Agreement. All Services shall be performed and provided in compliance with all applicable federal, state, and local laws, regulations, and rules.

IX.10. Consultant is aware of and familiar with the provisions of the Foreign Corrupt Practices Act of 1977, as amended ("**FCPA**") and will act in compliance with and take no action and make no payment in violation of or which might cause Consultant or Administrative Agent or any of their respective directors, officers, employees, or agents to be in violation of the FCPA.

IX.11. No litigation or administrative proceedings of or before any courts, tribunals or governmental authorities are presently pending or, to the knowledge of Consultant, threatened against Consultant or any properties of Consultant or with respect to this Agreement which, if adversely determined, would, individually or in the aggregate, reasonably be expected to (i) result in one or more (A) criminal or regulatory actions against Consultant or any officer or director of Consultant, relating to Consultant's servicing activities, (B) judgments, fines, penalties or settlements for payment of money in excess of ███████ or (C) injunctions, restrictions or sanctions that would reasonably be expected to be material to the ongoing operation of Consultant's business or the performance of its obligations hereunder, or (ii) otherwise have a material adverse effect on Consultant.

**Force Majeure**

IX.12. Neither Party shall be liable hereunder for any failure or delay in the performance of its obligations under this Agreement if such failure or delay is on account of causes beyond its control, including labor disputes, civil commotion, war, fires, floods, inclement weather, governmental regulations or controls, casualty, government authority, strikes, pandemics, epidemics, local disease outbreaks, public health emergencies, quarantines, or acts of God, in which event the non-performing Party shall be excused from its obligations for the period of the delay and for a reasonable time thereafter. Each Party shall use reasonable efforts to notify the other Party of the occurrence of such an event within ██████ business day of its occurrence.

**Waiver: Rights Cumulative**

IX.13. No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving Party. The failure of either Party to enforce any provision of this Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter. The rights and remedies of the Parties herein provided shall be cumulative and not exclusive of any rights or remedies provided by law or equity.

**Construction**

IX.14. Every covenant, term and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any Party hereto. This Agreement shall not be construed against either Party by virtue of a Party being deemed the drafter hereof. The article and section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of the Agreement. All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the party or parties, or their personal representatives, successors and assigns may require.

**Consent to Jurisdiction; Waiver of Jury Trial**

IX.15.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO ITS CONFLICT OF LAWS PROVISIONS (OTHER THAN §§5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW)).

IX.16.  EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT SITTING IN NEW YORK CITY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS, AND EACH PARTY HERETO HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT. THE PARTIES HERETO HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT THEY MAY EFFECTIVELY DO SO, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING. THE ADMINISTRATIVE AGENT HEREBY IRREVOCABLY APPOINTS LAW DEBENTURE CORP. (THE "LEADENHALL PROCESS AGENT"), WITH AN OFFICE ON THE DATE HEREOF AT 400 MADISON AVE #4D, NEW YORK, NY 10017, AS ITS AGENT TO RECEIVE, ON BEHALF OF THE LENDERS, THE ADMINISTRATIVE AGENT AND THEIR RESPECTIVE PROPERTY, SERVICE OF COPIES OF THE SUMMONS AND COMPLAINT AND ANY OTHER PROCESS WHICH MAY BE SERVED IN ANY SUCH ACTION OR PROCEEDING. THE ADMINISTRATIVE AGENT MAY APPOINT ANOTHER AGENT TO RECEIVE, ON BEHALF OF THE ADMINISTRATIVE AGENT AND ITS PROPERTY (THE "SUCCESSOR LEADENHALL PROCESS AGENT"), SERVICE OF COPIES OF THE SUMMONS AND COMPLAINT AND ANY OTHER PROCESS WHICH MAY BE SERVED IN ANY SUCH ACTION OR PROCEEDING AT ANY TIME WITH PRIOR WRITTEN NOTICE TO THE CONSULTANT. SUCH SERVICE MAY BE MADE BY MAILING OR DELIVERING A COPY OF SUCH PROCESS TO ADMINISTRATIVE AGENT IN CARE OF THE LEADENHALL PROCESS AGENT AT THE LEADENHALL PROCESS AGENT'S ABOVE ADDRESS OR IF APPLICABLE, TO THE SUCCESSOR LEADENHALL PROCESS AGENT AT THE SUCCESSOR LEADENHALL PROCESS AGENT'S ADDRESS INDICATED IN THE NOTICE OF THE APPOINTMENT OF SUCH SUCCESSOR, AND THE ADMINISTRATIVE AGENT HEREBY IRREVOCABLY AUTHORIZES AND DIRECTS THE LEADENHALL PROCESS AGENT OR IF APPLICABLE, THE SUCCESSOR LEADENHALL PROCESS AGENT TO ACCEPT SUCH SERVICE ON ITS BEHALF. THE PARTIES HERETO AGREE THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

IX.17.  EACH OF THE CONSUNTANT AND THE ADMINISTRATIVE AGENT CONSENTS TO THE SERVICE OF ANY AND ALL PROCESS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES OF SUCH PROCESS TO IT AT ITS

9

ADDRESS SPECIFIED IN SECTION IX.1. NOTHING IN THIS SECTION IX.17 SHALL AFFECT THE RIGHT OF THE CONSULTANT OR THE ADMINISTRATIVE AGENT TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.

IX.18.   TO THE EXTENT THAT CONSULTANT HAS OR HEREAFTERMAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION, EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, CONSULTANT HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS AGREEMENT.

IX.19.   EACH PARTY HERETO HEREBY WAIVES, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT OR ANY DOCUMENT EXECUTED OR DELIVERED PURSUANT HERETO.

**Late Fees**

IX.20.   Amounts due hereunder but not paid when due shall incur a late fee of ▮▮▮▮ per month until paid.

**Survival**

IX.21.   Any provisions hereof which by their nature would be intended to survive the Term, and including without limitation Articles 3, 5, 6, 7, 8, 9 & this 10, will survive any termination or expiration of this Agreement.

**Counterparts**

IX.22.   This Agreement may be executed by facsimile and in one or more counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument, without necessity of production of the others.

[THIS SPACE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties hereto have executed this Consulting Agreement on the date set forth below, and effective as of the date first set forth above.

COMPANY:

LEADENHALL CAPITAL PARTNERS LLP

| | |
|---|---|
| By: | |
| Name: | Tom Spreutels |
| Title: | Head of Origination, Life & Alternative Credit |
| Date: | 07 June 2024 |

CONSULTANT:

SAIPH CONSULTING LLC

| | |
|---|---|
| By: | |
| Name: | Paul Kosinski |
| Title: | Chief Executive Officer |
| Date: | |

11

Schedule A

Services

For each Receivable provided to Consultant (including, for the avoidance of doubt, those 777 collateral files received by Administrative Agent on November 28, 2023 and the 353 collateral files received by Administrative Agent on November 29,2023), Consultant shall:

1)  determine each Receivable's eligibility under the Loan and Security Agreement and provide summary reporting of findings.

2)  trace chain of title from each Receivables origination to placement in the credit facility financed by the Administrative Agent.

3)  Prepare a schedule of all payments due under each Receivable (an "annuity master")

4)  Prepare a schedule of cash flow ("cash mapping") for each Receivable, including relevant lock boxes, concentration accounts and collection accounts

5)  Collect all necessary information and data to allow the Administrative Agent to facilitate a potential transfer of servicing

Consultant will use best efforts to obtain all relevant information including receivable files on behalf of the Administrative Agent and make such records readily available to the Administrative Agent and any party they designate.

12