# Exhibit 5

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036-4003
Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Leigh M. Nathanson
Direct Dial: 212-790-5359
lnathanson@kslaw.com

September 17, 2024

**VIA E-MAIL**

John G. McCarthy, Esq.
Smith, Gambrell & Russell, LLP
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9703
jmccarthy@sgrlaw.com

Re:     *Leadenhall Capital Partners LLP et al. v. Wander et al.*, No. 24-cv-03453-JGK
        (S.D.N.Y.)

Dear John,

I write on behalf of my clients, Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall"), in response to your letter of September 11, 2024. Your letter appears to address two separate issues: (1) Leadenhall's rights to audit the collateral currently pledged to it under the parties' LSA, including through its consultant Saiph Group ("Saiph"); and (2) Leadenhall's rights under the LSA and other financing agreements to information regarding the Borrowers' and Guarantors' business and financial affairs and your clients' (referred to herein as the "777 Entity Defendants") withholding of that information as it relates to the pending litigation and preliminary injunction. We address each issue in turn.

*Collateral audit.* We appreciate your provision of further details regarding the allegations in your letter of August 20, 2024, as requested in my August 23, 2024 response. Saiph informed Leadenhall on September 10, 2024 that it had learned that Noah Davis, a former employee of one or more of the 777 Entity Defendants, had entered the SuttonPark offices on September 5, 2024, removed certain physical property (specifically, audiovisual equipment) from the premises, and returned it to SuttonPark a few hours later. Saiph represented that, according to Mr. Davis, he acted alone out of anger at his former employer arising from a payment dispute. Saiph further represented that Mr. Davis' acts were not committed in his capacity as an independent contractor of Saiph or in connection with Saiph's work on the collateral audits it was in the process of undertaking for Leadenhall and at least one other

John G. McCarthy, Esq.
September 17, 2024
Page **2** of **4**

SuttonPark creditor.  Indeed, per Mr. Pellegrino's email of August 14, 2024, SuttonPark had already suspended Saiph's access to its systems as of that date, so any access Mr. Davis gained thereafter could not have been within the scope of his role as a contractor for Saiph.  Upon learning of Mr. Davis' entry into SuttonPark's offices, we immediately requested that Saiph notify you of the information it had learned.  On September 11, 2024, immediately following the notice sent by Saiph's counsel, I emailed you requesting a call, and you did not respond to my request.

Saiph has not informed Leadenhall of any unauthorized *electronic* access by Mr. Davis of any SuttonPark or 777 Entity Defendant's data, as described in your September 11, 2024 letter. We understand from Saiph's letter to you of September 11, 2024 that Saiph is conducting an "independent audit of the devices and platforms to which Mr. Davis had access, to ensure no information was every improperly obtained or stored on Saiph's systems."

To the extent Mr. Davis committed any unauthorized "data intrusion," your letter does not include any facts indicating that any information Mr. Davis may have accessed had anything to do with Mr. Davis' relationship with, or work contracted by, Saiph.  Saiph's letter indicates that Mr. Davis' physical entry into the SuttonPark offices was motivated by his personal animus against his former employer.  We appreciate your acknowledgment that Mr. Davis may have had and used "credentials that he may have obtained while an employee at 777 Partners."

To be clear, the scope of work for which Leadenhall engaged Saiph, and the scope of Saiph's access to the 777 Entity Defendants' systems, was limited to obtaining information related to the collateral audit, as described in writing to B. Riley on May 19, 2024.[1]  *See* May 19, 2024 Ltr. From R. Schwartz to J. Howard re: Access to Certain Data and Information; Reservation of Rights.  As I stated in my letter of August 23, 2024, we understand that your clients limited and controlled the information (*i.e.*, servers, folders, and/or file locations) that could be accessed using the credentials they provided to Saiph.  Leadenhall did not direct or authorize Saiph or any employee or independent contractor thereof to access or attempt to access information beyond that described in the May 19, 2024 letter, to the extent it was even possible to do so.  The information provided to date by Saiph to Leadenhall relates to the collateral associated with Leadenhall's credit facility, which is well within the broad scope of information to which Leadenhall is entitled for purposes of a collateral audit under the LSA.  Thus, to its knowledge, Leadenhall is not in possession of any "documents, information, devices, and other property misappropriated from the 777 Entities and their affiliates."

Pending the results of Saiph's and the 777 Entity Defendants' investigations, we will advise our client that Leadenhall should communicate with the 777 Entity Defendants and any

---

[1] As you know, Paul Hastings is transactional and restructuring counsel for Leadenhall in connection with the parties' ongoing commercial relationship under the LSA and other financing agreements, including enforcing your clients' performance of ongoing obligations, and Leadenhall's rights, thereunder.  As you recognized in copying Paul Hastings on your August 20, 2024 letter to me, Paul Hastings has represented Leadenhall with respect to its outstanding requests for information under the LSA and other financing agreements and the administration of the collateral audit.  The inclusion of Paul Hastings attorneys on communications relating to these issues is appropriate given their role, as is your inclusion of 777's transactional and restructuring counsel on various communications.

John G. McCarthy, Esq.
September 17, 2024
Page **3** of **4**

employees or officers thereof through counsel.  We ask that you advise your clients and their current and/or former officers, including Mr. Wander, to do the same.  Please also confirm that the 777 Entity Defendants and B. Riley will continue to abide by their contractual obligations, including the obligations to deliver required reporting on the tenth business day of each month and to remit all cash collections and interest payments to Leadenhall.

***Information requests bearing upon transactions that may violate the preliminary injunction.***  Your September 11, 2024 letter states that 777's—now A-CAP's—"football assets" are not "implicated by the court's preliminary injunction order" and that you would "welcome []our explanation" otherwise.  As you know, the fact that "Leadenhall's collateral does not include any 'football assets'" is not dispositive of whether the transfer of those assets from 777 to A-CAP implicated a dissipation of the assets of the 777 Entity Defendants in violation of the preliminary injunction.  As stated in my September 9, 2024 letter, the 777 Entity Defendants have obstructed Leadenhall's ability to determine whether such a violation has occurred by refusing to provide information to which Leadenhall is contractually entitled that would reveal (1) the interest of the Guarantors in the "football assets" prior to, and/or remaining after, their transfer to A-CAP; (2) the terms of any such transfers, including whether the Guarantors were parties to those transactions and the consideration provided by A-CAP; and (3) any liens and claims on assets of the Guarantors purportedly entitling A-CAP to exercise remedies with respect to any of the "football assets."

Underscoring the need for disclosure of this information is the fact that you have not addressed Leadenhall's request for confirmation that B. Riley, its counsel, or an independent fiduciary has investigated the liens and claims against the 777 Entity Defendants, as would be customary as part of any restructuring process; we assume that no such investigation has been completed or is in process, notwithstanding B. Riley's purported role as a fiduciary for all creditors and stakeholders of 777.

Your September 11, 2024 letter states, contrary to the representations of 777's transactional and restructuring counsel, that "the 777 Entity Defendants disagree that Leadenhall is contractually entitled to the information it seeks under any of the contractual provisions cited in your letter."  But you provide no explanation or basis for that disagreement, and you admit in the following sentence that your clients' justification for refusing to respond to the requests is the fact that this litigation is pending.  Given that the LSA and other financing agreements have not been terminated and govern the parties' ongoing contractual relationships, the pendency of this lawsuit in no way nullifies your clients' ongoing obligations under those agreements.

Furthermore, the Court has repeatedly urged "greater transparency on the part of the defendants as to what they really intend to do" in terms of contemplated transactions involving 777.  July 8, 2024 Hr'g Tr. 22:19-20.  The Court has also acknowledged "that there are transactions that some would like to engage in and that some others would argue, yes, they violate the temporary restraining order.  If you think that they don't, talk about it, and if necessary, bring it to the Court." *Id.* 25:2-6.  Leadenhall has been made aware—by the press rather than by Defendants—of ongoing transactions whereby 777 has transferred assets to A-CAP and A-CAP is now marketing those assets for sale.  We assume that if these transactions are

John G. McCarthy, Esq.
September 17, 2024
Page **4** of **4**

legitimate, arm's-length transactions and/or do not implicate any assets of the enjoined parties, the 777 Entity Defendants will not object to sharing the information necessary to substantiate that.  If the 777 Entity Defendants will not disclose the terms of those transactions while continuing to withhold the information requested by Leadenhall under the LSA and the other financing agreements, Leadenhall will seek Court intervention.  We infer from your September 11 letter that such intervention will be necessary and will proceed accordingly.

       As always, we remain available to discuss at your convenience.

Sincerely,

Leigh M. Nathanson

CC:    David Pellegrino, Esq.